AMGRO, INC., *et al.*, Plaintiffs, *v.* RICHARD A. JOHNSON *et al.*, Defendants.— (ECONOMY FIRE AND CASUALTY COMPANY, Intervening Plaintiff-Appellant, *v.* AMGRO, INC., Intervening Defendant-Appellee.)

Third District   No. 78-194

Opinion filed May 9, 1979.

Robert S. Krockey and Joseph M. Cernugel, both of Cirricione, Block & Krockey, P. C., of Joliet, for appellant.

Sidney J. Karasik, of Chicago, and James E. Babcock and Frank H. Masters, Jr., both of Robson, Masters, Ryan, Brumund & Belom, of Joliet, for appellee.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

This case involved competing claims to an insurance record known as an "expiration." The case was heard in the Circuit Court of Will County

under a stipulation of facts and issues. The dispute in the instant case is between Amgro, Inc. (hereinafter Amgro) and Economy Fire and Casualty Company (hereinafter Economy).

On August 17, 1965, Economy and Lincoln Realty, an investment corporation, entered into an agency agreement which provided in part as follows:

> "In the event of the termination of this agreement, provided the agent shall pay to the company immediately all premiums for which he may be liable, the agent's use and control of expirations shall *remain* his property and be left in his absolute possession otherwise the use and control of expirations shall be vested in the company." (Emphasis added.)

On August 27, 1974, George F. Manikas and Shirley L. Manikas, for a consideration of $60,000 executed and delivered a promissory note to Amgro in the sum of $60,000. This loan enabled Mr. and Mrs. Manikas to purchase all of the assets of Lincoln Realty, an investment corporation, which purchase included all of the expirations owned by Lincoln Realty, an investment corporation. To secure the note the purchasers executed a security agreement and financing statement to Amgro, pursuant to and in compliance with section 9—101 of the Uniform Commercial Code (Ill. Rev. Stat. 1977, ch. 26, par. 9—101 *et seq.*). Both the security agreement and the financing statement recited that the collateral should include all furniture and fixtures, accounts receivable, records and expirations of Lincoln Realty and Insurance, plus all additions and accessions thereto. At a time approximately contemporaneous with the execution of the financing statement, Economy entered into an agency agreement with George M. Manikas, doing business as Lincoln Realty and Insurance. The substance of this second agency agreement was identical to the previous agency agreement entered into with Lincoln Realty, an investment corporation.

Subsequently, on November 1, 1974, George F. Manikas, doing business as Lincoln Realty and Insurance, sold his general insurance agency business, including all insurance contracts and expirations thereof, to Richard A. Johnson, the defendant herein. This sale was expressly subject to the security agreement executed in favor of Amgro. Mr. Johnson then transferred all of the assets to First Security Realty and Insurance Agency, Inc. (hereinafter First Security). In March of 1977 Economy and First Security entered into an agency agreement, which was identical to the two agency agreements previously mentioned.

On June 13, 1977, First Security was in default to Economy in that Economy was not paid premiums due on the policies it had issued through the First Security agency. Because of this nonpayment, Economy

terminated the agency agreement of First Security on June 13, 1977, and notified First Security of that termination.

On July 26, 1977, Amgro filed a complaint for injunction against Mr. Johnson and Mr. and Mrs. Manikas. Amgro's complaint stated that the note executed by Mr. and Mrs. Manikas was in default and requested that the court order the collateral which secured the note be turned over pursuant to the terms of the note and security agreement. Economy was not made party to these proceedings nor served with summons or other court process. On August 1, 1977, the Circuit Court of Will County entered a temporary restraining order against Mr. Johnson and First Security with regard to selling, giving away, or disposing of any assets of the insurance business of any of the defendants. The court ordered that the temporary restraining order would remain in effect until August 8, 1977.

On August 10, 1977, the circuit court issued a mandatory injunction order against First Security requiring it to turn over all of the books, premiums, records, policies, ledgers and furniture comprising the entire business of First Security to Amgro's attorney. The injunction order included the agency's expirations.

On October 7, 1977, Economy filed its petition to intervene and on October 11, 1977, the petition was allowed. Economy sought a temporary injunction to prevent Amgro from transferring or disposing of the insurance agency's expirations. On December 19, 1977, a hearing was held pursuant to the stipulation of facts and issues signed by counsel for all parties. Arguments were heard and on December 21, 1977, the circuit court handed down its opinion. That opinion held that the Amgro note and security agreement were subject to the pre-existing Economy agency contract, and that Amgro's ownership claim to the expirations was subject to the agent not being in default to Economy at the time the agency contract was cancelled. However, the court went on to hold that because Economy made no apparent effort to secure the expirations until it filed its intervening petition on October 7, 1977, and before this by inaction allowed Amgro to take the expirations and dispose of same, that therefore Economy was not the owner of the sole interest in the expirations of the Economy policies, but rather that the interest of Economy was limited to the amount of premiums due from the agency at the time of the cancellation of the agency agreement. On appeal the appellant, Economy, contends that it ought to be the sole owner of the expirations, and the cross-appellant, Amgro, contends that Economy ought not have any interest in the expirations.

The court is asked to determine whether the circuit court correctly held that Amgro's interest in the expirations is subject to Economy's

interest therein and whether the circuit court correctly held that Economy's interest was circumscribed by inaction.

We first consider the legal consequences of Economy's inaction for several months during the summer and early fall of 1977, but not before a brief discussion by way of background on the subject of this dispute. The record in the insurance business commonly referred to as an "expiration" has a definite meaning not only in the industry but in the law.

> "The record known in insurance circles as expirations is in effect a copy of the policy issued to the insured, which contains the date of issuance, name of the insured, expiration, amount, premiums, property covered and terms of insurance. This is made by the agent at the time of the issuance of the policy on a blank form furnished by the company. A copy of same is sent to the company." (*F. B. Miller Agency, Inc. v. Home Insurance Company* (1934), 276 Ill. App. 418, 425.)

These expirations constitute a valuable asset of any insurance agency for the reason that policy-holders have the well-known disposition to accept policies offered to them in renewal of, or in lieu of, expiring policies. This valuable asset is in the nature of a customer list, an intangible property right. However, expirations are more than simply a list of customers. The term "expirations" connotes not only physical records of an insurance agency relative to various policy-holders but also the exclusive right to use those records to solicit renewals. *Calley v. United States* (S.D. W. Va. 1963), 220 F. Supp. 111.

■■■ The circuit court determined that Economy's failure to take action from June 13, 1977, the date on which the agency agreement with First Security was terminated, until October 7, 1977, the date on which Economy filed its intervening petition, is inconsistent with its claim of sole ownership of the expiration. Counsel for both appellant and appellee identify that *ratio-decedendi* as falling within the ambit of the equitable doctrine of laches. Laches is such neglect or omission to assert a right, taken in conjunction with a lapse of time of more or less duration and other circumstances causing prejudice to an adverse party, as will operate to bar relief in equity. (*Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 147 N.E.2d 341.) The appellant, Economy, urges on this appeal that it cannot be charged with laches where it had no knowledge of the litigation between Amgro and First Security. We agree. There can be no laches where there is no knowledge and any consequent delay will not bar relief. (*Trustees of Schools v. American Surety Co.* (1940), 307 Ill. App. 398, 408, 30 N.E.2d 513.) Only where want of knowledge is caused by failure to exercise due diligence is it appropriate to apply the doctrine of laches. (*Trustees of Schools v. American Surety Co.*) The appellee does not quarrel with the appellant's assertion that the stipulated facts evidence no actual

knowledge of the litigation instituted by Amgro until the intervening petition was filed on October 7, 1977. Rather, the appellee argues that Economy must be charged with constructive notice. For that proposition it cites the case of *Pyle v. Ferrell:*

"These matters (the Court proceedings) were all of public record, and although appellant claims not to have had notice of any of these matters adverse to his ownership, such public record served as constructive notice to him * * *." (12 Ill. 2d 547, 554.)

In *Pyle* the party held to have constructive notice had reason to be suspicious and to inqure with regard to the public record. In that case the appellant did not for 16 years pay taxes or make inquiry with regard to the tax status of property in which the appellee was establishing and exercising an adverse claim. Appellant had reason to inquire and be suspicious as to why his property interest was not being taxed. Amgro also cites the case of *Miller v. Siwicki* (1956), 8 Ill. 2d 362, 134 N.E.2d 321. The *Miller* court is in accord when it says:

"For if the circumstances are such as to put them upon inquiry, neglect or failure to check available records may charge them with *laches* the same as if they had known the facts." (8 Ill. 2d 362, 366, 134 N.E.2d 321, 323.)

In another Illinois case, the appellate court quotes approvingly from a decision of the United States Supreme Court:

"If a person be ignorant of his interest in a certain transaction, no negligence is imputable to him for failing to inform himself of his rights; but if he is aware of his interest, and knows that proceedings are pending the result of which may be prejudicial to such interest, he is bound to look into such proceedings so far as to see that no action is taken to his detriment." (*Gunderson v. Illinois Trust & Savings Bank* (1902), 100 Ill. App. 461, 472, *aff'd* (1902), 199 Ill. 422, 65 N.E. 326, quoting from *Foster v. Mansfield, Coldwater & Lake Michigan R.R. Co.* (1892), 146 U.S. 88, 36 L. Ed. 899, 88 S. Ct. 102.)

For the reasons stated and based upon the authorities cited, we do not believe that Economy should be charged with constructive notice. Absent from the stipulated facts is evidence of any circumstances such as to raise suspicion or cause inquiry. Furthermore, at all times Economy had in its possession all of the information contained in the First Security list of expirations and did not need the agency's records to deal with the expirations. Following the default of First Security to pay premiums due, Economy was able to utilize this information to service existing policies instead of seeking such information from First Security. Economy undertook appropriate measures to determine promptly which policies

should be terminated for failure of the insured to make payment and which policies should be continued because the insured had remitted the premium to First Security, but First Security had defaulted. The ability of Economy to service existing policies without needing to obtain First Security's list by way of legal process or otherwise bears negatively on Amgro's claim of constructive notice.

Based upon the stipulated facts in the record, we hold that Economy exercised such diligence as required by a court of equity to avoid application of the doctrine of laches.

■ We now focus our attention on whether the circuit court correctly held that Amgro's interest in the expirations was subject to the Economy agency contract. At the outset, we note that where the record contains only stipulated facts, then the only question is as to their legal effect. And, where the question of legal effect is properly preserved for review on appeal, the reviewing court may determine whether the law was properly applied. (*Conway v. Garden City Paving & Post Co.* (1901), 190 Ill. 89.) In determining the legal effect of the stipulated facts, we are inclined to believe that the rules establishing priority among conflicting security interests (Ill. Rev. Stat. 1977, ch. 26, par. 9—312) may govern the priority of interest in the case at bar as between Amgro and Economy. Cases in other jurisdictions have held that where an instrument is in the nature of a security device, regardless of formality of wording, it is to be tested by those provisions of the Uniform Commercial Code pertaining to secured transactions. (*In re Miller* (5th Cir. 1977), 545 F.2d 916; *In re Gresham* (E.D.Va. 1970), 311 F. Supp. 974; *Mann v. Clark Oil & Refining Corp.* (E.D.Mo. 1969), 302 F. Supp. 1376; *Clark Oil & Refining Co. v. Liddicoat* (1974), 65 Wis. 2d 612, 223 N.W.2d 530.) Further, a security interest in customer lists has previously been recognized in court decisions. (*In re Emergency Beacon Corp.* (S.D.N.Y. 1977), 23 U.C.C. Rep. 766.) We do not hold that these authorites are controlling. Such a holding would, at this state, be premature in that this court would be denied the input of able and learned counsel for both parties to this cause. As may be necessary to achieve a just and equitable result, the reviewing courts of Illinois have broad powers of remandment. (Supreme Court Rule 366.) It is not unprecedent to remand with directions to the circuit court to consider the applications of other theories of law. (*Austin Liquor Mart, Inc. v. Department of Revenue* (1974), 18 Ill. App. 3d 894, 310 N.E.2d 710; *Abdill v. Abdill* (1920), 292 Ill. 231, 126 N.E. 543.) In reliance on that authority, upon remand, we direct the circuit court to consider whether the agency contract between Economy and First Security is in the nature of a security device and should therefore be tested by the priority of interest rules set forth in section 9—312 of the Uniform Commercial Code (Ill. Rev. Stat. 1977, ch. 26, par. 9—312).

For the reasons above stated, and after careful consideration of the stipulated facts and issues, the brief and arguments of counsel, and the thoughtful opinion of the learned trial judge, we remand this case to the Will County Circuit Court for further proceedings consistent with this opinion.

Reversed and remanded.

STOUDER and STENGEL, JJ., concur.