LA SALLE NATIONAL BANK, as Trustee, *et al.*, Plaintiffs-Appellants, v. DUBIN RESIDENTIAL COMMUNITIES CORPORATION *et al.*, Defendants-Appellees.

First District (1st Division)    No. 1—01—1947

Opinion filed February 18, 2003.

H. Reed Harris, of Chicago, for appellants.

Katriina S. McGuire, of Schain, Burney, Ross & Citron, Ltd., of Chicago, for appellees.

JUSTICE O'MALLEY delivered the opinion of the court:

La Salle National Bank and H. Reed Harris (Harris) filed a complaint alleging that Dubin Residential Communities Corporation (Dubin Residential), Dubin & Associates, Inc. (Dubin & Associates), and First Bank & Trust Company of Illinois (First Bank & Trust) (collectively, defendants) used part of the property located at 3213 North Wilton Avenue (3213 Property) in Chicago to obtain two different building permits in order to build a six-unit condominium on the adjoining property located at 3215 North Wilton Avenue (3215 Property), allegedly in violation of several Chicago zoning ordinances. The trial court dismissed the case in favor of the defendants, adopting

defendants' view that the complaint was barred by *laches*. Harris presents the following issues on appeal: (1) whether *laches* applies to the instant case; and (2) whether *laches* can estop a unit of government from the exercise of its police power.

For the reasons set forth below, we reverse and remand for further proceedings.

## BACKGROUND

■ H. Reed Harris is an attorney and the owner of residential property located at 3229 North Wilton Avenue in Chicago. That property is located north and within 1,200 feet of the properties at issue here. See 65 ILCS 5/11—13—15 (West 2000). In his suit, Harris seeks to abate the "illegal use of portions of the 3213 Wilton Property to overbuild on the 3215 Wilton Property." On or about July 19, 2000, Harris sent a letter to David Dubin, president of Dubin Residential and Dubin & Associates, accusing defendants of zoning violations which allegedly occurred some three years before. On November 13, 2000, Harris filed a verified complaint for injunction and other equitable relief pursuant to section 11—13—15 of the Illinois Municipal Code (the Code) (65 ILCS 5/11—13—15 (West 2000)). Section 11—13—15 provides, in pertinent part:

> "In case any building or structure *** is used in violation of an ordinance or ordinances *** under the Illinois Municipal Code, or of any ordinance or other regulation made under the authority conferred thereby, *** any owner *** within 1200 feet in any direction of the property on which the building or structure in question is located who shows that his property or person will be substantially affected by the alleged violation, in addition to other remedies, may institute any appropriate action or proceeding (1) to prevent the unlawful construction ***, (2) to prevent the occupancy of the building ***, (3) to prevent any illegal act ***, or (4) to restrain, correct, or abate the violation.
>
> *** [T]he court with jurisdiction of such action or proceeding *** may issue a restraining order, or a preliminary injunction, as well as a permanent injunction, upon such terms and under such conditions as will do justice and enforce the purposes set forth above. ***
>
> An owner or tenant need not prove any specific, special or unique damages to himself or his property or any adverse effect upon his property from the alleged violation in order to maintain a suit under the foregoing provisions." 65 ILCS 5/11—13—15 (West 2000).

The complaint alleges that on or about May 17, 1995, Dubin & Associates applied for a building permit to construct a 51-foot, 4-unit

condominium building with parking in a garage in the rear yard for four vehicles at the 3213 Property. However, Harris asserts that Dubin & Associates was not the owner of the 3213 Property until June 13, 1995. The dimensions of the 3213 Property were 25 feet wide and 135 feet deep. On or about July 14, 1995, Dubin & Associates was issued a building permit for the 3213 Property.

The complaint further alleges that Dubin Residential deeded portions of the 3213 Property to trust No. 10—1950 in two separate conveyances, both dated August 24, 1995. The first deed conveyed the "East 20 feet of the North 8 feet" of the 3213 Property to the trust and was recorded on August 28, 1995. The second deed conveyed the "East 40 feet of the North 6 feet," "the East 8 feet" and "the North .25 feet" of the 3213 Property to the trust. The latter was recorded on January 26, 1995. Harris's complaint avers that the conveyances violated Chicago zoning ordinances because they: (1) divided the 3213 Property lot; (2) reduced the size of its northside side yard; and (3) reduced the size of its rear yard.

On or about February 29, 1996, Dubin Residential applied for a building permit to construct a 55-foot high, 6-unit condominium building on the 3215 Property. Plaintiff maintains that First Bank & Trust became owner of the 3215 Property land trust on June 19, 1995, with Dubin Residential as the beneficial owner of the trust. Plaintiff's complaint further alleges that Dubin Residential's 3215 Property building permit application violated the off-street parking zoning ordinance which required that the six spaces be located on the same property unless a "special use" was authorized from the Chicago Zoning Board of Appeals, which had not been done. Harris asserts that without the "illegally acquired extra land," the 3215 Property does not provide the required off-street parking space for each unit on the same zoning lot as the building. Moreover, Harris asserts that Dubin Residential's building permit application to build the six-unit condominium on the enlarged 3215 Property violated several zoning ordinance sections because it included portions of the 3213 property zoning lot.

Other allegations include: the 3213 Property extends one foot beyond the property line; the 3213 Property does not have a handicapped parking space; the 3215 Property has no minimum front yard; the 3215 Property does not have a handicapped parking space; and the 3215 Property has insufficient side yards. The complaint further provided that the illegal use has caused Harris to suffer continued "grave and irreparable loss," an award of damages is not an adequate remedy to abate the illegal use of the properties, and it is necessary that a temporary injunction issue to bring the property into compliance with the zoning ordinances.

On January 29, 2001, defendants filed a motion to dismiss the complaint pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 2000)), asserting the affirmative defense of *laches*. Defendants maintained that *laches* applied where more than three years had passed between the time they began construction of the buildings, completed them and sold the units to third parties. The motion further alleged that "[f]or a number of years, Dubin has had no interest in either of the Properties and no control over their disposition." Defendants further asserted: (1) the property has been completely developed; (2) Harris delayed in asserting his rights; (3) defendants lacked knowledge of or notice that Harris would assert the claim or right; and (4) injury or prejudice would occur if the claim is held not to be barred.

The affidavit of the president of Dubin Residential and Dubin & Associates, David Dubin, was submitted in support of defendants' motion to dismiss. The affiant stated that subsequent to the issuance of the building permit, the four units in the 3213 Property were sold to third parties between April 22, 1996, and August 30, 1996. Also, the six units located at the 3215 Property were sold to third parties between April 17, 1997, and August 29, 1997. David Dubin affirmed that at no time prior to the construction and sale of the units did Harris raise any claims relative to any alleged violations. Further, "[n]either Dubin Residential Communities Corporation nor Dubin & Associates, Inc., nor any other related entity, has any interest in either the 3213 Property or the 3215 Property."

On January 30, 2001, Harris filed a motion for default judgment against First Bank & Trust, the trustee of trust No. 10—1950, the 3213 Property's condominium association and the 3215 Property's condominium association. On February 13, 2001, plaintiffs filed a motion to nonsuit defendant condominium associations. The associations were nonsuited without prejudice.

On April 24, 2001, the trial court heard arguments in support of defendants' motion to dismiss. Defendants argued that because Harris knew that these buildings were being built, he was charged with constructive notice and required to investigate any potential zoning violations; there were no zoning violations; Dubin was unaware of any claim until July 2000; and prejudice would occur if the claim was not barred. Harris maintained that there was no notice of zoning violations, constructive or otherwise, because "[y]ou can't see that there is anything wrong with the buildings from just looking at the construction that went on." Harris stated that his inquiry was triggered by a comment made at a subsequent zoning board hearing on June 16,

2000, that the 3215 Property was "overbuilt." After researching the permits and conveyances, Harris became concerned that a violation had occurred prompting his letter to Dubin in July 2000.

In granting Dubin's motion to dismiss, the trial court stated:

"I was concerned about the—Mr. Harris'[s] position of his knowledge position. But I believe the element of the nature of the relief that I must give in terms of not moving forward on the laches position in my view outweighs his argument about when he had notice. I think that it is reasonable what the defendant has argued, that you were charged with notice. \*\*\* I mean, because of the kind of remedy that I would have to impose in this matter if I was to ultimately impose in this matter if I was to ultimately find favorably for Mr. Harris.

So I am not making a determination on the merits of his argument, I am just indicating that I believe that it is barred by laches at this particular point.

\* \* \*

Well, I am not concerned about the builder, developer. I am more concerned about the impact that [it] is going to have on the residents that live in this property at this point. That's my decision."

Following the court's ruling, Harris further argued that he was not seeking demolition or reconstruction, but sought Dubin's compliance and the trial court's determination of appropriate relief. The trial court granted defendants' motion to dismiss and held that *laches* barred the claim.

Harris filed a combined motion for reconsideration and leave to file an amended complaint to add a prayer for relief seeking fines payable to the City of Chicago for each day the violations have continued since July 2000. A hearing was held on Harris's motion to reconsider and to amend. The motion was denied.

## ANALYSIS

Harris maintains that *laches* does not apply because he had no notice of the alleged zoning violations and acted promptly upon discovering the problem. Further, he contends that no prejudice can result because defendants have not changed their position, been prejudiced or suffered hardship predicated upon his delay. Defendants allege they will be prejudiced if the claim of *laches* is barred.

■ *Laches* is a defense that is asserted against a party who has knowingly slept upon his rights and acquiesced for a great length of time, and its existence depends upon whether, under all the circumstances of a particular case, a party is chargeable with want of due diligence and failing to institute proceedings before he or she did. *Pyle*

*v. Ferrell*, 12 Ill. 2d 547, 552, 147 N.E.2d 341 (1958). In determining the applicability of *laches*, four factors should be considered: " '(1) [c]onduct on the part of the defendant giving rise to the situation of which complaint is made and for which the complainant seeks a remedy; (2) delay in asserting the complainant's rights, the complainant having had notice or knowledge of defendant's conduct and the opportunity to institute a suit; (3) lack of knowledge or notice on the part of the defendant that the complainant would assert the right on which he bases his suit[;] and (4) injury or prejudice to the defendant in the event relief is accorded to the complainant or the suit is held not to be barred.' " *Slatin's Properties, Inc. v. Hassler*, 53 Ill. 2d 325, 330, 291 N.E.2d 641 (1972), quoting *Pyle*, 12 Ill. 2d at 553.

■ Whether the defense of *laches* is available is to be determined upon the facts and circumstances of each case. *Nancy's Home of the Stuffed Pizza, Inc. v. Cirrincione*, 144 Ill. App. 3d 934, 941, 494 N.E.2d 795 (1986). Like any affirmative defense, the burden is on the defendant to establish *laches* by a preponderance of the evidence. *O'Brien v. Meyer*, 281 Ill. App. 3d 832, 834, 666 N.E.2d 726 (1996). "The party asserting estoppel [through *laches*] must show prejudice or hardship rather than mere passage of time and must demonstrate that the delay induced him to adversely change his position." *Gersch v. Department of Professional Regulation*, 308 Ill. App. 3d 649, 661, 720 N.E.2d 672 (1999). Lack of diligence must result in some inequity to the adverse party such that it would be unfair and unjust to allow the belated assertion of the claim. *Nancy's Home*, 144 Ill. App. 3d at 940-41. "If the defendant is not injured by the delay, *laches* is inapplicable." *Nancy's Home*, 144 Ill. App. 3d at 941.

■ As the reviewing court, we must examine the record to determine whether the judge's finding that the defendants have established *laches* was against the manifest weight of the evidence. See *O'Brien*, 281 Ill. App. 3d at 835.

Defendants maintain that a review of the record and the factors set forth in *Pyle* demonstrates that Harris's delay is such that *laches* should apply. First, the properties were completed and occupied by the time plaintiff filed his claim. Second, plaintiff should be charged with constructive notice of zoning violations simply by the fact that construction commenced on the property in the immediate vicinity of his own Wilton property and he was able to view that activity, but nonetheless delayed exercising his rights. Third, Harris failed to notify Dubin until more than three years after the projects were completed and the units were sold to third parties. Fourth, "[t]he only manner in which Dubin could comply with a potential injunction order is to purchase back all of the units in the Properties, and reconstruct the

buildings," thus causing prejudice to defendants and the current residents.

■ It is essential that the party asserting the defense of *laches* plead and prove, not only that a considerable amount of time has elapsed with resultant prejudice, but also that the opposing party had prior knowledge or notice of the facts giving rise to the claims. See *Gersch*, 308 Ill. App. 3d at 661. There is no question that plaintiff had no actual notice of the zoning violations he claims have occurred. Therefore, for defendants to prevail in their defense of *laches*, they must show constructive notice. Constructive notice is defined as "[n]otice arising by presumption of law from the existence of facts and circumstances that a party had a duty to take notice of ***; notice presumed by law to have been acquired by a person and thus imputed to that person." Black's Law Dictionary 1088 (7th ed. 1999). Defendants argue that Harris should be charged with constructive notice based upon his ability to observe the size of the buildings and the adjoining parking lots, which were in plain view from his nearby property. It is defendants' assertion that plaintiff was then required to investigate the appropriate public records in order to discover any zoning violations.

Plaintiff asserts that he had no constructive notice by the mere fact that he could observe the buildings being built and he was reassured about their conformity by the display of City of Chicago building permits. Plaintiff maintains that he was only alerted to possible violations by a comment made by a board member at a hearing before the Chicago Zoning Board of Appeals on an application for a special use of an off-street parking space for the 3215 Property, one of the properties that is the subject of this suit. A new off-street parking space had to be found for one of the units because a flood had rendered the parking for this unit unusable. The board member said: "How often the Chairman keeps saying, parking will determine the building in the future. *I guess this site was overbuilt.*" (Emphasis added.)

During oral argument in opposition to the motion to dismiss, plaintiff acknowledged that he was not actually present at that Chicago Zoning Board of Appeals hearing, but he nonetheless became aware of the statement. Harris asserts that he had no reason, prior to the Chicago Zoning Board of Appeals hearing, to suspect that zoning violations existed. We agree.

Both parties cite *Pyle* in support of their positions. In *Pyle*, the appellant was a resident of California when he became aware of his ownership rights to an Illinois mineral estate after the death of his mother in 1932. By his own admission, appellant did not at any time between 1932 and 1954 either visit the land or pay taxes or attempt to

learn of their status. *Pyle,* 12 Ill. 2d at 550. When he returned to Illinois in 1946, he did not inspect the property or the property records. In 1954, he became aware that the estate had been sold to the appellee for delinquent taxes. In an action to quiet title, appellant testified that he never received notice of assessments or tax sale proceedings. Defendants asserted *laches.* In holding that *laches* barred plaintiff's claim, the court observed that there was evidence that the appellant became aware of his interest in the property in 1932. However, the purchaser bought the mineral estate for delinquent taxes in 1936, received a tax deed in 1938, paid taxes for 20 consecutive years, caused a joint interest in the mineral estate to be conveyed to his wife in 1951 and executed an oil-and-gas lease covering such estate in 1953. *Pyle,* 12 Ill. 2d at 554. The court reasoned that these were all matters of public record, and although appellant claimed to not have had notice of any of these matters adverse to his ownership, such public records served as constructive notice to him, where the adverse claimant was not guilty of any affirmative act of deception to prevent suspicion and inquiry. *Pyle,* 12 Ill. 2d at 554. The court wrote, "[t]he test is not what the appellant knows, but what he might have known by the use of the means of information within his reach with the vigilance the law requires of him." *Pyle,* 12 Ill. 2d at 554.

In *Slatin's Properties,* plaintiff filed suit to quiet title on two lots. Defendants asserted that plaintiff was precluded from instituting his suit to quiet title because it was barred by *laches.* The Illinois Supreme Court agreed. *Slatin's Properties,* 53 Ill. 2d at 331. The record demonstrated that plaintiff and its predecessors in title had never paid any general real estate taxes or special assessments levied upon the two lots in question for approximately 40 years. The court held that by virtue of the payment of taxes for approximately 40 years by the defendants, the plaintiff should have been put on inquiry as to defendants' adverse claims and was, therefore, barred by *laches* from asserting any claims to the premises in question. *Slatin's Properties,* 53 Ill. 2d at 331. The court reasoned that all four *Pyle* factors were met and noted that defendants' payment of taxes for nearly nine years after plaintiff acquired title to these lots was a matter of public record and defendants did not commit any deceptive acts that prevented plaintiff from discovering his possible claim. *Slatin's Properties,* 53 Ill. 2d at 331. Further, the court reasoned that under the particular facts of that case, plaintiff failed to exercise the required vigilance by which it could have ascertained defendants' claims and promptly instituted the necessary action. *Slatin's Properties,* 53 Ill. 2d at 331.

While the above-mentioned cases differ from the instant case in that they involve parties challenging the title to real property, we find

their reasoning instructive in determining whether plaintiff had constructive notice here. Those cases generally hold that matters of public record establish constructive notice and the unreasonable delay in asserting a claim may make the defense of *laches* available to a defendant who did not cause the unreasonable delay. Unlike the instant case, those cases also contain evidence of indifference and negligence on the part of the plaintiff in asserting his rights after being given reason for inquiry or clearly put on notice.

The following cases are also instructive in determining whether matters of public record constitute constructive notice to the complaining parties and whether *laches* may bar recovery: *Blaul v. Dalton*, 264 Ill. 193, 197, 106 N.E. 196 (1914) (while no demonstration of fraud in connection with execution of the deed, there was evidence that one of the complainants had occasion and opportunity to investigate the facts, and no reasonable excuse for delay shown); *Neagle v. McMullen*, 334 Ill. 168, 181-82, 165 N.E. 605 (1929) (evidence existed that appellants had notice as to the condition of the title or could have been aware by the exercise of due diligence); *Miller v. Siwicki*, 8 Ill. 2d 362, 366, 134 N.E.2d 321 (1956) (deed to property was public record and constituted constructive notice); *Bays v. Matthews*, 108 Ill. App. 3d 1112, 1119, 440 N.E.2d 142 (1982) (although aware that the property was being taxed, plaintiffs made no inquiry regarding the property's tax status); and *Szymanski v. Glen of South Barrington Property Owners Ass'n*, 293 Ill. App. 3d 911, 914 689 N.E.2d 272 (1997) (*laches* applicable where plaintiffs offered no reason for four-year delay between their initial objection and filing suit). See also *Moore v. Moore*, 15 Ill. 2d 239, 243-44, 154 N.E.2d 256 (1958) (recording of deed 10 months before the marriage did not constitute constructive notice to wife so as to bar complaint 11 years after the recording); *Tarpoff v. Karandjeff*, 17 Ill. 2d 462, 471, 162 N.E.2d 1 (1959) (no reason to excite suspicion in plaintiff to search the records and make inquiry); *Amgro, Inc. v. Johnson*, 71 Ill. App. 3d 485, 489, 389 N.E.2d 688 (1979) (in the absence of evidence of any circumstances such as to raise suspicion or cause inquiry, insurance company not charged with constructive notice of litigation between secured creditor and insurance agency); *De Kalb Bank v. Purdy*, 166 Ill. App. 3d 709, 725, 520 N.E.2d 957 (1988) (*laches* not applicable because defendant had constructive notice of plaintiff's rights when trust deed was a matter of public record for over 10 months before defendant signed his lease).

■ The two fundamental elements of *laches* are lack of due diligence by the party asserting the claim and prejudice to the opposing party. *Van Milligan v. Board of Fire & Police Commissioners*, 158 Ill. 2d 85, 89, 630 N.E.2d 830 (1994). Under the facts of this case, we

hold that the equitable defense of *laches* does not apply. Defendants have not met the burden of demonstrating either constructive notice to plaintiff of possible zoning violations or that his delay of four months was unreasonable once he was put on notice. Although the conveyances were of public record, there were no triggering factors to raise suspicion and/or investigation by the mere fact that the buildings were being built, especially where a valid building permit was posted on the construction sites. Because we find no lack of diligence, we see no inequity to defendants such that it would be unfair and unjust to allow the assertion of the claim. See *Nancy's Home*, 144 Ill. App. 3d at 940-41. Whether the party's delay is enough to constitute *laches* depends upon the circumstances of each case (*Higgins v. Brunswick Corp.*, 76 Ill. App. 3d 273, 279, 395 N.E.2d 81 (1979)), and here, these circumstances do not support a finding that Harris had the constructive notice required for the defense of *laches* to be applied.

■ Defendants also assert that the only manner in which they could comply with a potential injunction order is to purchase back all of the units, demolish and then reconstruct the buildings. It is true that, pursuant to the section under which Harris asserts his claim (65 ILCS 5/11—13—15 (West 2000)), the court may, in its discretion, issue a preliminary or permanent injunction in order to restrain the violation of an ordinance. However, as the trial court stated in its oral ruling, the merits of Harris's zoning violation claim have not been ruled upon. Therefore, we remand this case to the trial court to hold proceedings on the merits of Harris's claim that the building permits were acquired fraudulently and that the properties were constructed and used in violation of existing zoning ordinances. In the event that the trial court finds in favor of plaintiff, it may fashion a remedy appropriate to sanction defendants' conduct and to compensate plaintiff. Taking the consequences of one's conduct is not the same as "prejudice," as defendants contend in their brief. Relief is not limited, as defendants maintain, to demolition and rebuilding of the buildings in question. Rather, the trial court could order that defendants pay a fine or fees commensurate with the harm done. We leave the specific remedy to the sound discretion of the trial court, if one is found to be required. See *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 517, 524 N.E.2d 561 (1988).

Harris also asserts that *laches* cannot estop a unit of government from the exercise of its police powers. Because we reverse and remand for further proceedings, we will not address this assertion.

For the foregoing reasons, the trial court's dismissal based upon

the affirmative defense of *laches* is reversed and we remand to the trial court for further proceedings in accordance with this opinion.

Reversed and remanded with directions.

GORDON, P.J., and McNULTY, J., concur.