2025 IL App (1st) 241342

No. 1-24-1342

Order filed March 14, 2025

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| PALWAUKEE HOSPITALITY, LLC an Illinois limited liability company, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 2020 CH 7366 |
| PROSPECT HEIGHTS INVESTORS, LLC, an Illinois limited liability company, FRY THE COOP PROSPECT HEIGHTS, LLC, an Illinois limited liability company, | ) ) ) ) ) | Honorable Alison C. Conlon, Judge, Presiding. |
| Defendants-Appellees. | ) | |

JUSTICE NAVARRO delivered the judgment of the court.
Presiding Justice Mikva and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The circuit court erred in granting summary judgment in favor of defendants where there are genuine issues of material fact regarding the reciprocal easement agreement; reversed and remanded.

¶ 2        Plaintiff, Palwaukee Hospitality, LLC, appeals from the circuit court's order granting summary judgment in favor of defendants, Prospect Heights Investors, LLC and Fry the Coop Prospect Heights. Plaintiff's complaint challenged an easement on its property and contained claims to quiet title, slander of title, and injunction for misuse of an easement. On appeal, plaintiff

argues that the circuit court erred when it granted summary judgment in favor of defendants because plaintiff did not have constructive notice of the unrecorded reciprocal easement agreement, the person who signed the agreement on behalf of the restaurant property did not have authority to permanently bind the restaurant property to the reciprocal easement between the two properties, and any reciprocal easement agreement terminated before plaintiff purchased its property. Plaintiff also asserts that the recorded easement has serious defects. We reverse the circuit court's grant of summary judgment in favor of defendants, and remand for further proceedings.

¶ 3                                     I. BACKGROUND

¶ 4        Plaintiff is the owner and operator of a hotel located in Prospect Heights (hotel), and defendant Prospect Heights Investors, LLC is the owner of an adjacent property being operated as a restaurant (restaurant) by defendant Fry the Coop Prospect Heights (collectively defendants). Plaintiff purchased the hotel property in December 2018, and defendants purchased the restaurant property in January 2020. Thereafter, in July 2020, a "Reciprocal Easement Agreement" dated February 28, 2014, relating to a reciprocal easement for access between the properties was recorded in the Cook County Recorder's Office. Plaintiff then filed a complaint against defendants challenging the reciprocal easement agreement.

¶ 5                                       Complaint

¶ 6        Plaintiff's first amended complaint contained claims for declaratory action to quiet title, slander of title, and injunction for misuse of easement. Plaintiff alleged as follows. Plaintiff acquired "clear and marketable" title to the hotel property in December 2018 "without any easements of record that rendered the property servient in any way to any adjoining properties." After plaintiff acquired title to the hotel property, various parties with a potential interest in the

restaurant property expressed an interest in establishing "an easement to run across the hotel property for ingress and egress to the restaurant property," but plaintiff never agreed to the proposed easement, which would render the hotel's parking lot unsafe, as vehicles would drive through the lot to get to the restaurant.

¶ 7        Plaintiff further alleged that defendants acquired the restaurant property in January 2020, and then in July 2020, defendants caused a "reciprocal easement" dated February 28, 2014, to be recorded in the Cook County Recorder's Office. The recorded document was a copy of a reciprocal easement allegedly signed by parties who did not own the properties in July 2020 when the reciprocal easement was recorded, and the party who signed the document in February 2014 on behalf of the restaurant property was not the owner of that property at the time it was signed. In plaintiff's claim for declaratory action to quiet title, it sought a declaration that defendants and any subsequent parties did not have any right to utilize any portion of the hotel property for ingress and egress on to its property.

¶ 8        In plaintiff's slander of title claim, it alleged that in June 2019, it attended a meeting with the prior owners of the restaurant property as well as representatives of the city of Prospect Heights, at which the prior owners of the restaurant property expressed that they wanted to "establish an easement to accommodate their desire to provide additional access to their property to the general public." Plaintiff did not agree to the easement based on its concerns for the safety of its hotel guests. Plaintiff further alleged that even though defendants were aware that it did not agree to an easement with the prior owners of the restaurant property, defendants recorded a copy of the alleged easement for the purpose of effecting title to plaintiff's property. Plaintiff alleged that defendants' actions demonstrated a malicious intent and reckless disregard for the value of the title to plaintiff's property.

¶ 9        In plaintiff's claim for injunction for misuse of easement, it alleged that to the extent the easement exists, it facilitates the general public to use its property as a thoroughfare in violation of the Illinois Motor Vehicle Code (625 ILCS 5/11-305(b) (West 2024)) as well as the reciprocal easement agreement, which states that the provisions "are not intended to and do not constitute a dedication for public use of the Driveways." Plaintiff alleged that it "has frequently observed motorists traveling *** who have entered the Plaintiff's property to traverse its parking lot to the access point of the Defendants' property in order to avoid the traffic signal at the intersection and to then cross the Defendants' property ***."

¶ 10        Plaintiff attached a copy of the recorded reciprocal easement agreement to its complaint, which shows it was signed on February 28, 2014, by RK Hospitality, LLC (RK Hospitality), the party who sold the hotel property to plaintiff, and Frontier Star, LLC (Frontier), and was recorded on July 30, 2020.  According to the agreement, Frontier owned the restaurant property, and RK Hospitality and Frontier "wish to create a reciprocal easement for access to, from and between" the properties.

¶ 11                        Defendants' Affirmative Defense

¶ 12        In defendants' affirmative defense, they asserted that in 2016 there was no means of egress between the hotel property and the restaurant property, as the properties were separated by concrete curbs located at or about the property line separating the two properties. In May 2016, RK Hospitality, plaintiff's predecessor in title, applied for a permit to make a curb cut and perform related work in the area between the properties. Defendants stated that the purpose of the proposed curb cut was "to allow vehicular access between the two properties, as reflected in an easement agreement executed by RK Hospitality LLC and Frontier Star, LLC, agent for the owner" of the restaurant property in 2014. Defendants asserted that under that agreement, RK Hospitality was

paid $5,000. In August 2016, the city of Prospect Heights (city) approved the proposed curb cut and the work was subsequently performed.

¶ 13    Defendants further alleged that RK Hospitality benefited from the curb cuts, as the removal of the curbs enlarged the area for vehicles to make safe turns at the southwest corner of the hotel building. Before the curb cuts, vehicles turning at that corner were funneled from four areas of traffic on plaintiff's hotel property into a narrow area about the width of one lane and, after the curb cuts, the area for making the turn doubled, which increased the safety for the drivers on the hotel property.

¶ 14    Defendants alleged that before plaintiff purchased the hotel property, plaintiff had constructive notice of the "existence of the agreement of access" between the two properties and it was aware of the curb cuts and that vehicles passed between the two properties. Defendants stated that when plaintiff acquired the hotel property in December 2018, vehicles passed "without hinderance through the curb cut area between the two properties" and "the passage of vehicles through the curb cuts were actual, open and obvious, and no reasonable person could fail to observe such use." Defendants alleged that the city possessed copies of the easement agreement as well as a record of the $5,000 payment made to RK Hospitality and that, had plaintiff contacted the city to verify the permit for the curb cut work, it would have discovered the easement agreement.

¶ 15                    Defendants' Motions for Summary Judgment

¶ 16    The parties filed cross-motions for summary judgment. In defendants' motion for summary judgment, they set forth facts relating to the ownership history of the properties and attached verifications from Sanjay (Sean) Patel, the owner of RK Hospitality, and defendants' counsel to support their assertions. Patel stated in his verification that plaintiff purchased the hotel property from RK Hospitality in 2018.

¶ 17      As for the restaurant property, defendants' counsel stated in his verification as follows. JC123 Holdings, LLC, of which Jason LeVecke was the manager, purchased the property in November 2012 and a few days later, deeded the property to HDI Chicago Rest LLC. In May 2014, HDI Chicago Rest LLC deeded the property to the Borgogno Family Trust. The Borgogno Family trust entered into a 20-year lease agreement with Frontier, which was managed by LeVecke. In 2015, Frontier's lease was terminated in bankruptcy proceedings. In 2017, Farmers Insurance Group Federal Credit Union acquired title to the restaurant property through a foreclosure action against the Borgogno Family Trust, and in January 2020, defendant Prospect Heights Investors acquired the property.

¶ 18      Defendants stated in their motion for summary judgment that in February 2014, Patel and LeVecke entered into the reciprocal easement agreement, which, among other things, granted a "mutual, reciprocal, non-exclusive and perpetual easement of access for vehicles and pedestrians across both properties for the parties' tenants, employees, agents, customers, licensees, and invitees." In March 2014, pursuant to that agreement, LeVecke paid Patel $5,000. In May 2016, Patel submitted a permit application to the city with plans to construct an opening between the two properties, and Patel attached a copy of the reciprocal easement agreement with his application. In August 2016, the city approved the plans and issued a permit for RK Hospitality to install the curb cut between the two properties, and the project was completed before plaintiff acquired the hotel property.

¶ 19      Defendants argued that the court should enter summary judgment in their favor because the existing curb cut and pathway between the hotel property and restaurant property placed plaintiff on constructive notice of the easement such that plaintiff had a duty to investigate and inquire about it. Defendants asserted that before closing, plaintiff was aware of the open curb cut

area between the two properties because it visited the property and viewed the survey of the hotel property. Defendants also asserted that had plaintiff inquired about the pathway to either the seller or the city's building department officials, which plaintiff met with before closing to discuss plans for the property, plaintiff would have discovered the reciprocal easement agreement.

¶ 20 Defendants further argued that plaintiff did not meet its burden of proving that LeVecke did not have authority to sign the reciprocal easement agreement, asserting that the agreement expressly stated that the "party signing for the restaurant property 'owns' the parcel." Defendants also stated that LeVecke's company "initially owned the restaurant lot" and that, although the property was ultimately transferred to the Borgogno Family Trust, LeVecke remained in possession of the restaurant under the 20-year lease with the Borgogno Family Trust. The lease provided that LeVecke had authority to make improvements and additions to the property. Defendants further argued that even if LeVecke did not have authority to sign the reciprocal easement agreement on behalf of the restaurant property, RK Hospitality ratified the agreement by receiving the $5,000 payment, applying for the permit and installing the curb cut. Defendants asserted that RK Hospitality, plaintiff, and the restaurant property benefited from the easement.

¶ 21 As previously noted, defendants attached to their motion a verification from Patel who also averred that in 2014, LeVecke approached Patel and requested that he agree to the installation of a curb cut opening between the properties "for the purpose of allowing vehicular traffic to travel between the two properties." Patel agreed to the "installation of the curb cut in order to allow vehicular traffic to travel between the two properties" and he signed the reciprocal easement agreement "for the purpose of having the curb cut installed." Attached to the verification was a copy of the executed reciprocal easement agreement that Patel signed on behalf of RK Hospitality,

a copy of the $5,000 check that RK Hospitality received, and the permit application submitted to the city.

¶ 22      The reciprocal easement agreement stated that RK Hospitality owned the hotel property, Parcel 1, and Frontier owned the restaurant property, Parcel 2. It stated that the parties "wish[ed] to create a reciprocal easement for access to, from and between" the properties. It further stated as follows:

> "[RK Hospitality] hereby grants to Frontier and Frontier hereby grants to [RK Hospitality], for use by [RK Hospitality] and Frontier and the respective tenants, employees, agents, customers, licensees, invitees, successors, and assigns of [RK Hospitality] and Frontier, a mutual, reciprocal, nonexclusive and perpetual easement, right and privilege of use for purposes of ingress and egress by vehicular and pedestrian traffic to and from Parcel 1 and Parcel 2 over the driveways now existing or subsequently constructed on Parcel 1 and Parcel 2 (the 'Driveways')."

The reciprocal easement agreement provided that, "[p]rior to recording this instrument, and within five (5) days following Frontier's receipt of [RK Hospitality's] executed, properly notarized, original counterpart of this Reciprocal Easement Agreement, Frontier shall make a one-time payment to [RK Hospitality] in the amount of $5,000.00." The agreement also contained a "Public Dedication" provision, which stated that, "[t]he provisions of this Reciprocal Easement Agreement are not intended to and do not constitute a dedication for public use of the Driveways." The agreement also provided that "[a]ll provisions of this instrument, including the benefits and burdens, run with the land and are binding upon and shall inure to the benefit of the successors and assigns of the parties hereto."

¶ 23    Defendants also attached to their motion a verification from Daniel A. Peterson, the Director of Building and Development for the city, who stated that in 2016, Patel applied for a permit "to remove a portion of the concrete curbs that separated the parking lots" located at the properties. Peterson further stated that Patel submitted with his application "plans for the curb cut work, along with signed and unsigned copies of the easement agreement." In August 2016, the city approved Patel's application for a permit to install the curb cut between the two properties, and Peterson attached copies of Patel's application and the signed and unsigned easement agreements to his verification.

¶ 24         Plaintiff's Response to Defendants' Motion for Summary Judgment

¶ 25    In response to defendants' motion for summary judgment, plaintiff challenged the validity of the recorded easement, arguing that it was not the original document, it was a "barely legible photocopy" without legal descriptions and property index numbers, and it was allegedly executed by the prior owners six years earlier. Plaintiff also contended that it did not have constructive notice of the easement, arguing that there were no recorded easements when it purchased the property, and that RK Hospitality expressly confirmed in the "Chicago Title Insurance Company – Statement Required for the Issuance of ALTA Owners and Loan Policies," or "ALTA statement," that there were no unrecorded easements affecting the hotel property. Plaintiff attached to its response the ALTA statement dated December 6, 2018, and signed by the seller, RK Hospitality, and plaintiff. The ALTA statement provided:

> "To the best knowledge and belief of the undersigned, the following is hereby certified with respect to the land described in the above commitment *** That there are no unrecorded leases, easements, or other servitudes to which the land or building, or portions thereof, are subject, except the following, if any:____None."

¶ 26    Plaintiff also asserted that it "was approached by the Defendants and had attended meetings with the City of Prospect Heights officials seeking an agreement to grant an easement," which plaintiff declined. According to plaintiff, this showed that neither the city's officials nor defendants thought there was a prior easement. Plaintiff also stated that it could not be considered to have had constructive notice of an ingress and egress easement simply because there was a large area without any barriers between the two properties.

¶ 27    Plaintiff further asserted that LeVecke was the tenant of the restaurant property when he signed the reciprocal easement agreement and that he therefore did not have authority to enter into the agreement on behalf of the prior owner of the restaurant property. Plaintiff stated that, even if LeVecke had authority to enter into the agreement, any agreement terminated when his lease expired.

¶ 28    Plaintiff attached to its response an affidavit from Amin Amdani, plaintiff's managing member, who stated as follows. Plaintiff relied upon the ALTA statement it received at closing in "assuming that there were no easements" and there was "nothing about the physical character of the property or any documents or other form of evidence whatsoever that would suggest to anyone on behalf of the Plaintiff that any easements existed at the time the Plaintiff purchased the hotel property." After plaintiff acquired title to the hotel property in December 2018, plaintiff's representatives attended a meeting in June 2019 with the "prior owners" of the restaurant property and the city's representatives, at which the "prior owners of the restaurant property had expressed" to plaintiff that they "wanted to establish an easement to accommodate their desire to provide additional access to their property and to the general public," and the city's representatives never indicated that an easement existed. Plaintiff did not agree to an easement because it was concerned

for the safety of its hotel guests, as "vehicles attempting to get to the restaurant property would be cutting through the hotel property's parking lot that is reserved exclusively for its guests."

¶ 29      Amdani also averred in the affidavit that a title agent identified as Kevin Palmer caused a document "purporting to be a reciprocal easement across the two properties" to be recorded in the Cook County Recorder's office on July 30, 2020. The record includes a document entitled "Affidavit for Recorder's Labeling of Signatures as Copies" signed by Palmer and stamped by the Cook County Recorder of Deeds on July 30, 2020, stating that the reciprocal easement agreement was originally executed by RK Hospitality and Frontier Star and that the original document was "now [lost], or [not in possession] of the party seeking to now record the same."

¶ 30                          Defendants' Reply

¶ 31      In reply, defendants argued that the curb cut opening and the survey gave plaintiff constructive notice and triggered a duty to inquire, asserting that, except for the constructed opening that allows vehicles to pass between the properties, the properties are separated by a physical barrier of double curbs and grass. Defendants asserted that their "request that plaintiff agree to a new easement agreement does not negate the existence or enforceability of the existing one," which defendants had not located at the time of the June 2019 meeting. Defendants further argued that plaintiff did not meet its burden of showing that LeVecke did not have authority to enter into the reciprocal easement agreement on behalf of the owner of the restaurant property at that time, asserting that LeVecke was the principal person behind the acquisition of the restaurant property, he had authority to bind the owner of the restaurant property, and the prior owner of the hotel property ratified LeVecke's authority by accepting the payment and applying for a permit.

¶ 32                          Circuit Court's Ruling

¶ 33       In a written order, the circuit court granted defendants' motion for summary judgment on all of plaintiff's claims. The court concluded that there was no genuine issue of material fact, that plaintiff had constructive notice of the reciprocal easement agreement and the hotel property was bound by the reciprocal easement. The court stated that "the nature of the curb cut here created an access point that drivers could freely use to travel between the parties and *was* 'plainly apparent to the eye.' " (Emphasis in original.) The court also noted that the "no one disputes (and Plaintiff alleges in its complaint) that cars have been using the 'access point' between the two properties" and that before plaintiff purchased the property, it would "have had the opportunity to observe drivers using the access point." The court therefore found that plaintiff had a legal duty to inquire about the existence of the easement agreement.

¶ 34       The court also concluded that the easement "was intended to and does run with the land" such that the parties are bound by the easement. In doing so, the court noted that Patel's actions on behalf of the hotel property "indicate[d] that he intended the easement to continue beyond the time that [LeVecke's] lease ended" and the language in the reciprocal easement agreement did not indicate that the parties expected the easement to terminate when LeVecke's lease ended.

¶ 35       The circuit court subsequently denied plaintiff's motion to reconsider the court's order granting summary judgment in favor of defendants. This appeal followed.

¶ 36                                    II. ANALYSIS

¶ 37       Plaintiff contends the circuit court erred when it granted summary judgment in favor of defendants and found that plaintiff had constructive notice of the reciprocal easement agreement. Plaintiff argues that the court based its decision on what plaintiff "could have observed in the area where the curb had been absent between the two properties" and that the opening

between the two properties does not necessarily provide constructive notice that an easement existed or was apparent to the eye. Plaintiff asserts that the court failed to consider the ALTA statement plaintiff received at closing, which was signed by Patel and explicitly stated that there were no unrecorded easements. According to plaintiff, Patel's verification, in which Patel stated he signed the reciprocal easement agreement, contradicts the ALTA statement and creates an inference that plaintiff inquired about any unrecorded easements and was given written evidence that an easement did not exist.

¶ 38     "Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). A circuit court may properly grant summary judgment if the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2024). " '[T]he purpose of summary judgment is to determine whether a question of fact exists.' " *Downing as Trustee of James Downing Irrevocable Trust v. Somers*, 2023 IL App (4th) 220900, ¶ 14 (quoting *Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 402 (1996)). "The court must construe the evidence strictly against the movant and liberally in favor of the opponent." *Sabatino v. First American Title Insurance Co.*, 308 Ill. App. 3d 819, 822 (1999). The court should deny summary judgment "[w]here a reasonable person could draw divergent inferences from undisputed facts." *Outboard Marine Corp.*, 154 Ill. 2d at 102. Our review of the circuit court's entry of summary judgment is *de novo*. *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007). As an appellate court, we review "the judgment of the circuit court and not the reasons given for that judgment." *Fifth Third Bank v. Brazier*, 2019 IL App (1st) 190078, ¶ 13.

¶ 39      " 'An easement is a right or privilege in the real estate of another.' " *McGoey v. Brace*, 2022 IL App (1st) 210322, ¶ 36 (quoting *Nationwide Financial, LP v. Pobuda*, 2014 IL 116717, ¶ 28). An easement "may be created by covenants or agreements as well as by grant." *Chicago Title & Trust Co. v. Wabash-Randolph Corp.*, 384 Ill. 78, 84 (1943). Easements for ingress and egress "give the dominant estate holder the right to use the servient estate to enter and leave its property." *Downing as Trustee of James Downing Irrevocable Trust*, 2023 IL App (4th) 220900, ¶ 18.

¶ 40      Further, "[p]urchasers of real estate have a duty to examine the record and are chargeable with notice of whatever appears in the record chain of title." *Pacemaker Food Stores, Inc. v. Seventh Mont Corp.*, 117 Ill. App. 3d 636, 645 (1983). In addition, "[p]urchasers of land burdened with an easement take the land subject to easements expressly created of which they have notice and such other easements as are apparent from an inspection of the premises." *Id*. "Before invoking a court's equity to protect rights under an easement, a party must submit clear and convincing proof that the easement exists 'so as to remove every substantial doubt of the existence of such rights.' " *Downing as Trustee of James Downing Irrevocable Trust*, 2023 IL App (4th) 220900, ¶ 21 (quoting *Chicago Title & Trust*, 384 Ill. at 84).

¶ 41      As previously noted, plaintiff contends the circuit court erred in finding that it had constructive notice of the unrecorded reciprocal easement agreement.

¶ 42      "Constructive notice is knowledge that the law imputes to a purchaser, whether or not he had actual knowledge at the time of the conveyance." *US Bank Nat. Ass'n v. Villasenor*, 2012 IL App (1st) 120061, ¶ 59. "Constructive notice is defined as '[n]otice arising by presumption of law from the existence of facts and circumstances that a party had a duty to take notice of ***; notice presumed by law to have been acquired by a person and thus imputed to that person.' "

*LaSalle National Bank v. Dubin Residential Communities Corp.*, 337 Ill. App. 3d 345, 352 (2003) (quoting Black's Law Dictionary 1088 (7th ed. 1999)).

¶ 43    Here, construing the evidence strictly against the defendants, as the movants, and liberally in favor of plaintiff, the opponent, there are genuine issues of material fact such that we cannot determine whether, as a matter of law, plaintiff had constructive notice of the unrecorded reciprocal easement agreement.

¶ 44    There is no dispute that when plaintiff purchased the hotel property in December 2018, plaintiff did not have actual notice of the reciprocal easement agreement. There is also no question that the reciprocal easement agreement was not recorded until July 2020, which was after plaintiff purchased the hotel property. Rather, the parties dispute whether plaintiff had constructive notice of the unrecorded reciprocal easement agreement.

¶ 45    The record shows that in early 2016, the properties were separated by concrete curbs located between the two properties and there was no means of egress between them. In August 2016, the city approved a permit application submitted by Patel, the prior owner of the hotel property, to install a curb cut. Before plaintiff purchased the hotel property in December 2018, Patel installed the curb cut opening between the two properties. Defendants argue that the physical nature and presence of the constructed curb cut opening and paved drive that allows vehicles to travel between the hotel property and restaurant property, as well as the survey of the hotel property, placed plaintiff on constructive notice that the easement existed when it purchased the property.

¶ 46    However, the facts in the record do not undisputedly show that before plaintiff purchased the property, the physical nature of the curb cut and the passage of vehicles through it was plainly visible and obvious from viewing either the hotel property or the survey. There is

nothing in the record to support that when plaintiff visited the hotel property before closing, it observed vehicles travelling through the open area where the curb cut was located. Rather, in plaintiff's answers to defendants' discovery requests, it stated that none of the individuals who visited the property before closing "necessarily took particular notice of the area where the curb between the properties was not continuous as it was not a prominent feature of the property." Likewise, as for the survey, in an answer to a discovery request regarding the survey, plaintiff objected to "any reference in the [survey] being a 'curb cut' or any inference that any curb was 'cut' or removed from the border between the two properties," and it stated that there "appears to be an area that could indicate that the curb between the two properties is not continuous."

¶ 47    The record shows, on the other hand, that after plaintiff purchased the property, it observed vehicles travelling through the curb cut opening, as it alleged in its complaint that it "has frequently observed motorists travelling *** who have entered the Plaintiff's property to traverse its parking lot to the access point of the Defendants' property in order to avoid the traffic signal ***." Likewise, in plaintiff's answers to defendants' requests for admission of fact, it stated that after it acquired the hotel property, it placed barricades in the area to prevent vehicles from passing between the hotel property and the restaurant property.

¶ 48    Accordingly, there are issues of material fact regarding whether before plaintiff purchased the property, it observed vehicles travelling through the open area where the curb cut was constructed or whether the physical nature of the curb cut and vehicles passing through it was so plainly visible when viewing either the hotel property or the survey that plaintiff was placed on constructive notice of the unrecorded reciprocal easement agreement.

¶ 49    Defendants cite *Duresa v. Commonwealth Edison Co.*, 348 Ill. App. 3d 90, 99-100 (2004), to support their argument that the physical nature of the constructed curb cut placed

plaintiff on constructive notice of the unrecorded easement. In *Duresa*, where this court concluded that the plaintiffs had constructive notice of the defendant utility company's unrecorded easement such that the unrecorded easement was binding on them, the plaintiffs admitted they were aware of the defendant's utility poles on their property. 348 Ill. App. 3d at 93, 101. The visible structure of 35-foot utility poles that existed on the plaintiffs' property in *Duresa* is distinguishable from the physical structure of the curb cut opening located in the parking lot between the two properties here. And, as previously noted, there is nothing in the record to show that before plaintiff purchased the property, it observed vehicles traveling through the curb cut opening.

¶ 50       Defendants also assert that the physical nature of the curb cut placed plaintiff on constructive notice such that plaintiff had a duty to inquire about any easements. See *Stump v. Swanson Development Co.*, *LLC*, 2014 IL App (3d) 110784, ¶ 104 ("Under the concept of inquiry, or constructive, notice, a person will be charged with notice when that person has knowledge of facts or circumstances that would cause a person of prudence to make further inquiry.").

¶ 51       As previously discussed, there is no dispute that the reciprocal easement agreement was not recorded when plaintiff purchased the property. The record also shows that at the closing on the hotel property in December 2018, plaintiff received the ALTA statement and special warranty deed, both signed by Patel, the prior owner of the hotel property, showing that there were no unrecorded easements affecting the property. The ALTA statement expressly stated that there were no unrecorded easements. The special warranty deed, which defendants attached to their motion for summary judgment, stated that the "premises are free and clear from any encumbrance done or suffered by Grantor." However, in Patel's verification attached to defendants' motion for summary judgment, he stated he signed the reciprocal easement agreement, and he attached the signed, unrecorded reciprocal easement agreement to his verification. Given the inconsistency between

the documents plaintiff received at closing and Patel's verification, there are questions of fact as to whether any unrecorded easement was disclosed to plaintiff at the closing on the property and whether plaintiff inquired as to any unrecorded easements.

¶ 52    We also note that defendants assert that given the "undeniable purpose of the curb cut opening" plaintiff had a duty to inquire about any easements, but plaintiff never requested permit documents from the city, which possessed copies of the reciprocal easement agreement. However, according to Amdani's affidavit, at a meeting in June 2019 with the "prior owners" of the restaurant property and the city, the prior owners requested plaintiff to agree to an easement, and the city never indicated that an easement existed. Based on these facts, there is also a question of fact regarding whether, had plaintiff asked the city about any permit documents or the existence of any unrecorded easements, plaintiff would have discovered the reciprocal easement agreement that was attached to Patel's permit application submitted to the city in August 2016.

¶ 53    In addition, there are questions of fact in the record relating to whether LeVecke had authority to sign the reciprocal easement agreement in February 2014 on behalf of the restaurant property.

¶ 54    In defendants' counsel's verification attached to defendants' motion for summary judgment, counsel stated that in November 2012, JC123 Holdings, of which LeVecke was a manager, deeded the property to HDI Chicago Rest, LLC, and then in May 2014, HDI Chicago Rest, LLC deeded the property to the Borgogno Family Trust. Based on these facts, at the time the reciprocal easement agreement was signed in February 2014, HDI Chicago Rest, LLC owned the restaurant property.

¶ 55    Defendants assert that HDI Chicago Rest, LLC was LeVecke's "co-developer" and that LeVecke through Frontier was an authorized agent of HDI Chicago Rest, LLC when he signed the

agreement. However, defendants do not provide support or cite to the record to support their assertion that LeVecke was an authorized agent of HDI Chicago Rest, LLC.

¶ 56     Plaintiff asserts that LeVecke was a tenant of the owner of the restaurant property when the reciprocal easement was signed in February 2014, and that, as a tenant, LeVecke did not have authority to enter into a permanent reciprocal easement agreement. However, there are also questions of fact as to whether LeVecke was a tenant of the owner of the restaurant property at the time the reciprocal easement was signed. As previously noted, the Borgogno Family Trust did not own the restaurant property until May 2014, after which it entered into a lease for the restaurant property with Frontier, of which LeVecke was managing member. The lease agreement between the Borgogno Family Trust and Frontier contained in the record does not provide a date for when the lease started. Accordingly, there are questions of fact as to whether LeVecke had authority to enter into the reciprocal easement agreement as an authorized agent of HDI Chicago Rest, LLC or as a tenant of the Borgogno Family Trust and whether he had authority to permanently bind the restaurant property to the easement.

¶ 57     Because several questions of material fact exist, we cannot determine whether plaintiff had constructive notice of the unrecorded reciprocal easement agreement, whether the reciprocal agreement easement was valid, or whether Patel ratified the reciprocal easement agreement. The trial court's grant of summary judgment was improper, and we must remand for further proceedings.

¶ 58                                III. CONCLUSION

¶ 59     For the foregoing reasons, we reverse the circuit court's order granting defendants' motion for summary judgment and remand for further proceedings.

¶ 60     Reversed and remanded.