# Illinois Official Reports

## Appellate Court

---

**Kampmann v. Hillsboro Community School District No. 3 Board of Education**,
2019 IL App (5th) 180043

---

| | |
|---|---|
| Appellate Court Caption | SCOTT KAMPMANN, Plaintiff-Appellant, v. THE HILLSBORO COMMUNITY SCHOOL DISTRICT NO. 3 BOARD OF EDUCATION, Defendant-Appellee. |
| District & No. | Fifth District<br>No. 5-18-0043 |
| Filed | October 25, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Montgomery County, No. 17-CH-19; the Hon. Amanda S. Ade-Harlow, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Silver Lake Group, Ltd., of Greenville (Thomas G. DeVore, of counsel), for appellant.<br><br>S. Jeff Funk, of Miller, Tracy, Braun, Funk & Miller, Ltd., of Monticello, for appellee. |
| Panel | JUSTICE CATES delivered the judgment of the court, with opinion Presiding Justice Overstreet and Justice Moore concurred in the judgment and opinion. |

**OPINION**

¶ 1    Scott Kampmann filed a complaint for declaratory judgment against the Board of Education (Board) of the Hillsboro Community School District No. 3 (District) alleging the Board exceeded its statutory authority in entering into an energy services agreement and four change orders with Ameresco, Inc. (Ameresco), related to construction projects on District property. The circuit court dismissed the complaint, finding that Kampmann's suit was barred by the doctrine of *laches*. Kampmann appeals, and we affirm.

¶ 2                                    BACKGROUND

¶ 3    During the spring of 2013, the Board sought proposals for energy and operational cost savings measures for several District facilities. On April 25, 2013, the Board submitted these proposals for publication to the Capital Development Board Procurement Bulletin. Three energy services companies, M360, GRP Mechanical, and Ameresco, submitted proposals to the Board. Ameresco's proposal included $7,445,769 of proposed work for Hillsboro High School, Hillsboro Junior High School, Beckemeyer Elementary School, and Coffeen Elementary School.

¶ 4    On June 25, 2013, the Board's building and grounds committee (Committee) interviewed representatives of the three companies that had submitted proposals. On July 9, 2013, the Committee met again to discuss the merits of the proposals that had been submitted. As a result of their discussions, the Committee held a public hearing and voted to recommend that the Board pass a resolution authorizing a letter of intent to Ameresco for the upcoming project.

¶ 5    During a regularly scheduled meeting of the Board held later that same day, the Board considered the Committee's recommendation. The July 9, 2013, meeting was open to the public, and the agenda for that meeting indicated that one of the items to be discussed was the "Letter of Intent for Performance Contracting." The minutes from the meeting indicate that the District superintendent reported the Committee's recommendation that the Board issue a letter of intent to Ameresco for two projects. Those projects included bathroom renovations and roof work to the Hillsboro Junior High School, which had previously been approved by the Board for fiscal year 2014. The District superintendent concurred in the Committee's recommendation. After due consideration, the Board voted to approve a resolution authorizing that a letter of intent for the two projects at Hillsboro Junior High School be issued to Ameresco. On July 10, 2013, the superintendent issued the letter of intent to Ameresco on behalf of the District.

¶ 6    On September 17, 2013, during a regularly scheduled public meeting, the Board considered and approved the energy services agreement (Agreement) with Ameresco. Prior to that meeting, written notice of the Board's intention to enter into this Agreement had been posted in the public agenda, available to the community at large. In accordance with the Board's approval, the District entered into the Agreement with Ameresco on September 17, 2013. The next day, the District issued a notice to proceed to Ameresco. The scope of services encompassed within the Agreement included the renovation of the bathrooms and a roof sealer for the Hillsboro Junior High School for a price of $170,982.

¶ 7    On March 14, 2014, the Board provided written notice of a public hearing to be conducted on April 8, 2014, regarding the District's proposal to sell bonds in the amount of $5,395,000

to finance future work to be performed by Ameresco. On April 8, 2014, the Board conducted the open hearing to receive public comments on the sale of the bonds. No public comments or questions were raised at the meeting. On May 13, 2014, during the following regularly scheduled meeting, the Board voted to pass a resolution to sell $5,395,000 in bonds to fund the Ameresco projects. The District issued the approved bonds on June 9, 2014.

¶ 8 Meanwhile, between April 1, 2014, and May 5, 2015, the Board approved, and the District entered into, four change orders to the Agreement with Ameresco, to wit: (1) on April 1, 2014, a change order in the amount of $108,055; (2) on May 13, 2014, a change order in the amount of $4,502,597; (3) on July 24, 2014, a change order in the amount of $72,932; and (4) on May 5, 2015, a change order in the amount of $745,747. The work contracted for and performed under the Agreement and the change orders were all within the scope of Ameresco's original proposal and totaled $5,600,313.

¶ 9 The Agreement and change orders stipulated that a total of $7,883,627 in guaranteed energy and operational savings would be realized over a 20-year period by the District by implementing the measures contained therein. The Board, however, waived any audit, measurement, or recovery of all but $335,018 of the taxpayers' guaranteed savings. The Board had no independent evaluation completed by an architect or an engineer to assess the likelihood of the District realizing the stipulated savings. The Board has never sought to audit, measure, or recover any of the guaranteed taxpayer savings that it did not waive. On December 15, 2015, with all work having been completed under the Agreement and change orders, the District submitted its final payment to Ameresco. Ameresco was paid from the proceeds of the sale of the bonds.

¶ 10 On March 14, 2017, Kampmann filed a complaint for declaratory and injunctive relief against the Board; Sandy Leitheiser, as the Montgomery County Clerk and Recorder; and Ron Jenkins, as the Montgomery County Treasurer. Kampmann requested the circuit court enter an order finding that the Board entered into the Agreement and change orders in excess of its statutory authority and declaring the contracts void *ab initio*. Kampmann also sought an order permanently enjoining the defendants from levying, extending, or collecting any tax within the District for the purpose of repaying the outstanding bonds used to fund the Agreement and change orders. On May 30, 2017, Leitheiser and Jenkins were dismissed without prejudice on Kampmann's motion.

¶ 11 On June 2, 2017, Kampmann filed an amended complaint against the Board for declaratory judgment, alleging the Board exceeded its statutory authority and violated article 19b of the School Code (105 ILCS 5/art. 19b (West 2012)) by entering into the Agreement and change orders. Kampmann alleged the Board violated approximately 12 statutory requirements in the procurement and execution of the contracts, including the District's waiver of the taxpayers' guaranteed savings. Kampmann requested the circuit court enter an order finding the Board entered into the Agreement and change orders in excess of its statutory authority and declaring the contracts void *ab initio*.

¶ 12 On July 3, 2017, the Board filed a combined section 2-615 and section 2-619 motion to dismiss the amended complaint. 735 ILCS 5/2-615, 2-619 (West 2016). As part of its section 2-619 motion, the Board raised the affirmative defense of *laches*. On July 27, 2017, the circuit court held a hearing on the Board's motion to dismiss and took the matter under advisement. On January 3, 2018, the court entered an order dismissing Kampmann's amended complaint against the Board, holding the claim was barred by *laches*. The circuit court found

Kampmann's claim should be barred because Kampmann had notice of the Board's actions yet failed to bring suit until after construction had been completed, all payments had been made, and the Board had issued bonds. This appeal follows.

¶ 13                                            ANALYSIS

¶ 14    Section 2-619(a)(9) of the Code of Civil Procedure provides for the dismissal of an action where the claim "is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2016). *Laches* is one of the affirmative defenses that may be brought in a section 2-619 motion. *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 50. As an affirmative defense, the defendant has the burden of establishing the doctrine by a preponderance of the evidence. *La Salle National Bank v. Dubin Residential Communities Corp.*, 337 Ill. App. 3d 345, 351 (2003). Whether *laches* is available as a defense is determined by the facts and circumstances of each case. *La Salle National Bank*, 337 Ill. App. 3d at 351. The determination of *laches* is within the sound discretion of the trial court, and we will not set aside that court's determination absent a clear abuse of discretion. *Lee v. City of Decatur*, 256 Ill. App. 3d 192, 196 (1994).

¶ 15    *Laches*, also referred to as the doctrine of stale demand, is an equitable defense that bars recovery by a litigant whose unreasonable delay in bringing an action has prejudiced the rights of the other party. *Richter*, 2016 IL 119518, ¶ 51; *Pyle v. Ferrell*, 12 Ill. 2d 547, 552 (1958). Unlike a statute of limitations, *laches* is more than a mere passage of time "but principally a question of the inequity of permitting the claim to be enforced, an inequity founded upon some change in the condition or relation of the property and parties." *Pyle*, 12 Ill. 2d at 552; *Richter*, 2016 IL 119518, ¶ 51. The fundamental elements of *laches* are lack of due diligence by the plaintiff and prejudice to the defendant. *La Salle National Bank*, 337 Ill. App. 3d at 354. It is essential that the defendant plead and prove, not only that there was an unreasonable delay in bringing the suit and resultant prejudice, but also that the plaintiff had knowledge or notice of the facts giving rise to the claim. *La Salle National Bank*, 337 Ill. App. 3d at 352.

¶ 16    In *Pyle*, the Illinois Supreme Court held that a suit is barred by *laches* where (1) there is conduct on the part of the defendant giving rise to the situation of which complaint is made and for which the plaintiff seeks a remedy; (2) the plaintiff delayed in asserting his rights, even though he had notice or knowledge of the defendant's conduct and he had the opportunity to institute a suit; (3) the defendant had no knowledge or notice that the plaintiff would assert the right on which he bases his suit; and (4) injury or prejudice to the defendant if relief is accorded to the plaintiff or the suit is held not to be barred. *Pyle*, 12 Ill. 2d at 553.

¶ 17    On appeal, Kampmann argues that the circuit court abused its discretion in dismissing his claim for *laches*. We will begin, however, with Kampmann's ancillary argument that *laches* should not be used to bar a claim such as his, where a taxpayer has filed a complaint that a public body exceeded its statutory authority when entering into a contract. In support of this proposition, Kampmann argues there are no reported cases vitiating a taxpayer claim for *laches* when a public body entered into a contract in excess of its statutory authority; argues that the circuit court erred in relying on *People ex rel. Prindable v. New York Central R.R. Co.*, 400 Ill. 507 (1948), and *Bowman v. County of Lake*, 29 Ill. 2d 268 (1963), in dismissing his suit because neither case involved this specific factual scenario; and argues that allowing *laches* to bar a taxpayer complaint would place an affirmative duty on the taxpayers to "micro manage" a public body's compliance with statutory limitations.

- 4 -

¶ 18    First, Kampmann's assertions—that the circuit court erred in relying on *Prindable*, 400 Ill. 507, and *Bowman*, 29 Ill. 2d 268, and that the alleged absence of cases addressing the specific facts present in this case indicates that *laches* is not applicable here—are both without merit. The circuit court looked to *Prindable*, 400 Ill. 507, and *Bowman*, 29 Ill. 2d 268, for guidance in determining whether the doctrine of *laches* should lie in this case. Those cases provided the court with appropriate guidance on issues relevant to the case before it, including the length of time a plaintiff delayed in asserting his rights, the injury or prejudice inflicted if a plaintiff's suit is not barred, and a plaintiff's constructive notice on matters of public record. *Prindable*, 400 Ill. at 517; *Bowman*, 29 Ill. 2d at 280-81. Furthermore, *Bowman*, 29 Ill. 2d 268, was a taxpayer suit challenging the actions of several public bodies as being in violation of their statutory and constitutional authority. See also *Droste v. Kerner*, 34 Ill. 2d 495, 515 (1966) (Schaefer, J., dissenting) (noting that *laches* is applicable to taxpayers' actions).

¶ 19    Furthermore, Kampmann's contention that *laches* should not be applied as a matter of policy because it places too onerous of a burden on taxpayers to oversee public bodies "in real time" is also misplaced. Oversight of public bodies is the very essence of taxpayer actions. See *Scachitti v. UBS Financial Services*, 215 Ill. 2d 484, 493-94 (2005) (a taxpayer action is one brought by private persons on behalf of themselves and as representatives of other similarly situated taxpayers "for the purpose of seeking relief from illegal or unauthorized acts of public bodies or public officials, which acts are injurious to their common interests as such taxpayers" (internal quotation marks omitted)). Quite simply, Kampmann's initiation of a taxpayer action is inherently inconsistent with his rejection of the responsibility of policing public bodies. Kampmann has provided this court with no compelling justification for rejecting the requirement that such taxpayer actions be brought within the confines of this equitable doctrine, which is to say, within a reasonable period of time and before the public body has suffered prejudice as result of the plaintiff's lack of diligence.

¶ 20    Next, Kampmann maintains that the circuit court erred in finding his claim was barred by *laches* because (1) he did not unreasonably delay in bringing his suit; (2) the delay did not cause the Board to pursue a different course of action than it otherwise might have if suit had been initiated sooner; (3) as a public body, the Board was charged with notice of its statutory limitations and was always on notice that a taxpayer may assert a claim that the Board acted in excess of its statutory authority; and (4) the Board failed to show that it would suffer any injury or prejudice if his suit was not barred.

¶ 21    Kampmann argues his initiation of his suit less than two years after the last change order was entered into was not an unreasonable delay and that the delay did not cause the Board to pursue a different course of action than it otherwise might have if suit had been initiated sooner. Notably, Kampmann does not contest that he had knowledge of the Board's actions. The record supports a finding that Kampmann had, at least, constructive knowledge of the Board's actions because the Board discussed the procurement of the contracts and the issuance of the bonds during numerous open meetings between July 9, 2013, and May 5, 2015. See *La Salle National Bank*, 337 Ill. App. 3d at 352-54 (holding that, as a general rule, matters of public record establish a plaintiff's constructive notice of an issue and the plaintiff's unreasonable delay in asserting a claim).

¶ 22    Here, Kampmann initiated his suit against the Board in March 2017, which was approximately four years after the Board entered into the original Agreement, three years after the bonds were issued, and more than a year after all construction had been completed and all

payments made. It is undeniable that there have been irreversible changes to the District's physical property and to the District's financial obligations as a result of the District's and Ameresco's performance under the contracts. Kampmann's contention that there is no indication that the Board would have pursued a different course of action if suit had been initiated sooner is belied by the record. The record indicates that on May 13, 2014, as part of the bond approval process, the Board certified that it had complied with the Open Meetings Act (5 ILCS 120/1 *et seq.* (West 2014)) and that there was "no litigation or controversy pending or threatened and there are no tax objections pending or threated questioning or affecting in any manner whatsoever *** the right of the District to levy taxes for school purposes." Over the course of two years, and without notice that Kampmann would challenge the Board's actions, the Board entered into five contracts to have substantial construction work completed on District property and issued $5,395,000 in bonds to pay for the work. Kampmann's timely initiation of a suit challenging the Board's actions could have impacted the Board's execution of future change orders and would have impacted the Board's ability to issue bonds financing the contracts. Under the circumstances, it was unreasonable for Kampmann to delay filing his suit until after the District had irreversibly altered its physical property and its financial obligations.

¶ 23    Kampmann also asserts that the Board, as a public body, is charged with notice of its statutory limitations and notice that a taxpayer might assert a claim challenging the Board's authority to act. Nothing in the record suggests that the Board had notice that Kampmann or any other taxpayer intended to file a complaint challenging the Board's authority to enter into the subject contracts or to issue the bonds to pay for the work completed under said contracts. Furthermore, Kampmann provides no citation of any authority supporting a finding that the Board, due only to its nature as a public body, is presumed to have notice of all potential lawsuits challenging its authority to act.

¶ 24    Finally, Kampmann argues the Board failed to show that it would suffer any injury or prejudice if his suit was not barred. In its motion to dismiss, the Board asserted it would suffer profound injury if the court granted Kampmann his requested relief and declared the contracts void *ab initio* because the District would be unable to meet its bond and interest payments incurred as a result of the contracts. In his brief, Kampmann asserts that he did not request a remedy related to the bond and interest payments and merely sought an order declaring that the contracts were void. During oral argument, Kampmann suggested that the circuit court could possibly reform the contracts in some manner even though this remedy had never been specifically raised or requested. In his amended complaint, however, Kampmann alleged that, due to the various statutory violations, all the Board's actions related to the procurement and execution of the contracts were void. Kampmann's amended complaint contested the use of future taxpayer money to "replenish public funds utilized to finance" the contracts and specifically requested an order declaring the contracts "void *ab initio* and invalid and of no force and effect whatsoever since [their] inception." In its motion to dismiss, the Board responded to Kampmann's specific allegations and request for remedies. On appeal, it cannot be said that the Board failed to meet its burden of demonstrating prejudice because the Board did not demonstrate that it would be prejudiced by the circuit court's entry of some other unspecified, previously unrequested relief.

## CONCLUSION

Under the facts of this case, the circuit court did not abuse its discretion finding that Kampmann's claim against the Board was barred by *laches*. The circuit court's judgment dismissing Kampmann's complaint is affirmed.

Affirmed.