2023 IL App (1st) 211187-U

No. 1-21-1187

Order filed March 9, 2023

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| IN RE MARRIAGE OF CHRISTOS: | ) | Appeal from the |
| | ) | Circuit Court of |
| Lynn P. Christos, | ) | Cook County |
| | ) | |
| Petitioner-Appellant/Cross-Appellee, | ) | |
| | ) | |
| v. | ) | 04 D 230092 |
| | ) | |
| Steve C. Christos, | ) | Honorable |
| | ) | Daniel J. Trevino, |
| Respondent-Appellee/Cross-Appellant. | ) | Judge Presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Lampkin and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court erred in finding that the mother's claim for child support arrearage was barred by *laches* and equitable estoppel; we also find the court abused its discretion when it determined that the additional income the father earned from working at a healthcare facility could not be considered in calculating his child support obligation. Conversely, we find the court properly: calculated the downward modification of the father's child support obligation; made the modification of child support retroactive to June 2020, rather than February 2020; determined that the parties did not have an agreement to equally share their daughter's college costs; allocated the parties' respective contributions toward the college expenses; and denied the father's petition for attorney fees.

¶ 2    Petitioner Lynn P. Christos (Lynn) appeals, and respondent Steve C. Christos (Steve) cross-appeals, from a post-decree order entered by the circuit court of Cook County. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.[1]

¶ 3                                   I. BACKGROUND

¶ 4    Lynn and Steve were married on December 9, 2000. Two children were born during the marriage, Christina on May 1, 2002, and Peter on September 22, 2003. A judgment for dissolution of marriage was entered on February 6, 2006, dissolving the parties' marriage. Incorporated into the judgment was the parties' marital settlement agreement (MSA) and joint parenting agreement (JPA). The JPA provided that the parties would have joint custody of the children, with Lynn having their primary residential custody.

¶ 5    The court also issued a uniform order for support setting forth Steve's child support obligations under the MSA. Paragraph five of the MSA provided that based on Steve's annual income of $241,654 as a medical doctor, he was to pay $3,688 per month in child support. In addition, Steve was required to pay 28% of any net income he received from additional employment (moonlighting) within seven days of receipt. "Net income" was defined as income Steve received from "moonlighting," less any deductions as set forth in section 505(a)(3) of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/505(a)(3) (West 2000)).

¶ 6    The MSA also included a provision regarding the parties' obligations to contribute toward their children's college expenses. Paragraph nine of the MSA provided that each party would contribute to their children's college expenses "commensurate with his/her respective ability to do

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon entry of a separate written order.

so at the time each child is ready to attend college."

¶ 7    On January 29, 2020, Steve filed a motion to modify child support and for contribution toward college expenses. The motion was based on Steve's claim of substantial change in circumstances, namely that Christina had been exclusively residing with him since August 2014. Steve's request for contribution for college expenses was based on his contention that the parties agreed to allocate those costs equally between them, after application of any scholarships Christina received.

¶ 8    Lynn responded by filing a petition for rule to show cause, seeking to hold Steve in indirect civil contempt of court.[2] In the petition, Lynn alleged that Steve violated the MSA by failing to provide her with copies of his federal income tax returns for 2006, "or for any year thereafter." Lynn based her allegation on paragraph five of the MSA which contained a handwritten notation stating that "[t]he parties will exchange copies of their filed Federal income tax returns no later than April 21st of each year (or as soon as filed if thereafter) until their obligations under this agreement are satisfied." Lynn maintained that she required Steve's federal income tax returns to determine if he was earning any income in addition to the annual income he represented he was earning in the MSA. Lynn subsequently issued a subpoena to Steve's accountant requesting production of Steve's federal income tax returns for the years 2006 through 2017.

¶ 9    Lynn asserted that before the trial court ruled on Steve's motion to modify child support, the court should order Steve to tender the federal income tax returns she requested. Lynn further asserted that any contributions she was required to pay toward Christina's college expenses should be based on "in state college education expenses which the child were to incur if she were to attend

---

[2]"[T]he purpose of a rule to show cause petition is to determine if a party has complied with a prior court order, allows the allegedly noncompliant party the opportunity to explain any noncompliance and, if necessary, allows the trial court to enforce the prior court order." *In re Marriage of Britton*, 2022 IL App (5th) 210065, ¶ 42.

the University of Illinois at Urbana-Champaign."

¶ 10    Lynn also filed a petition for interim and prospective attorney fees, claiming to have insufficient funds to pay for an attorney. Lynn averred that she borrowed funds from her father to cover her legal expenses. Lynn alleged that Steve had the financial ability to contribute to her attorney fees, as well as pay his own attorney fees.

¶ 11    In response, Steve argued that Lynn's petition for rule to show cause was premature as there was no trial court finding that he had violated the MSA by failing to provide Lynn with copies of his federal income tax returns. Steve maintained that the provision in the MSA regarding the obligation to turn over federal income tax returns was mutual. Steve claimed that he provided Lynn with copies of his federal income tax returns for the years 2006 through 2010. He argued that Lynn was the one who breached the MSA by only providing him with copies of her federal income tax returns for the years 2006 through 2008, and he maintained that she had done so only to claim Christina as a dependent exemption. Steve moved to quash the subpoena for his 2006 - 2017 tax returns.

¶ 12    Steve contended that Lynn requested copies of his federal income tax returns only after he filed his motion to modify child support. Steve argued that Lynn's request for his tax returns should be denied on the basis of one or more of the following affirmative defenses: (a) breach of contract; (b) waiver; (c) estoppel; (d) laches; or (e) unclean hands.

¶ 13    Steve added that the subpoena should be quashed on the grounds that it was overbroad and sought information unrelated to issues pending before the trial court. Steve further claimed that, in ruling on Lynn's petition for interim and prospective attorney fees, the trial court must consider the parties' current incomes and assets, and the amounts paid to their respective attorneys.

¶ 14    On May 8, 2020, the trial court ordered Steve to produce his tax returns for 2006 through

4

2019. On May 28, 2020, following a hearing, the court entered an order denying Lynn's petition for rule to show cause. The court found that: (1) Lynn "shall issue an Amended Request to Produce regarding [Steve's] tax returns on or before May 29, 2020"; (2) Steve "shall provide responses and/or objections to the Amended Request to Produce on or before June 12, 2020. If [Steve] produces documents containing redactions, he shall also provide a corresponding privilege log regarding those redactions with the production"; and (3) Steve "is granted leave to file an Amended Motion for Protective Order in connection with the production of his tax returns." The court also quashed the subpoena that was served on Steve's accountant.

¶ 15     Lynn filed a second petition for rule to show cause on June 12, 2020, which she later amended on September 10, 2020. Lynn alleged that Steve violated the child support provision of the MSA by failing to pay her "28% of his net income in excess of the amount of $241,654 on an annual basis." Lynn claimed Steve owed child-support arrearage for 2008, and 2016 through 2019.

¶ 16     On June 16, 2020, Lynn filed an emergency petition for a temporary restraining order and preliminary injunction seeking to enjoin and prohibit Steve from discussing their pending litigation with their daughter Christina. According to Lynn, Christina had become verbally abusive toward her after discussing the pending litigation with Steve. Lynn claimed that the verbal abuse included references to her counsel and his daughter. Lynn noted that Christina and her counsel's daughter recently graduated together from the same high school. Lynn contended that, in light of Christina's verbal abuse, her counsel had become concerned about his and his daughter's safety with regard to Christina.

¶ 17     Steve countered that it was Lynn who had discussed the pending litigation with Christina and added that his ex-wife and daughter had not had a civil relationship since Christina moved in with him in August 2014. Steve contended that Lynn's emergency petition was rife with hearsay,

was not well grounded in fact or existing law, and lacked any good-faith arguments. He claimed that the emergency petition was filed to harass and cast him in a negative light. Steve moved to disqualify Lynn's counsel on the ground that counsel's status as a witness to Lynn's emergency petition barred counsel from serving as Lynn's attorney.

¶ 18    Lynn subsequently withdrew her emergency petition prior to a hearing on the merits and she retained new counsel. Steve was granted leave to file a motion for sanctions pursuant to Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018). On July 29, 2020, the trial court granted Steve's motion for sanctions and gave him leave to file a fee petition relating to the motion. In addition, the court denied Lynn's petition for interim and prospective attorney fees, without prejudice. Thereafter, Steve filed a fee petition and an amended motion to modify child support and for contribution toward college expenses.

¶ 19    On February 19, 2021, the trial court commenced a seven-day bench trial on the parties' respective post-decree claims. At the close of the evidence, the parties submitted written closing arguments, and proposed findings of fact and conclusions of law. The trial court took the case under advisement, and on August 30, 2021, issued a detailed written order.

¶ 20    In its order, the trial court made certain findings of fact and conclusions of law relevant to the issues on appeal. The court found that a substantial change in circumstances occurred in August 2014, when Christina began exclusively residing with Steve and he became her sole caretaker. The court noted that after Christina moved in with Steve, he continued to pay Lynn monthly child support in accordance with the terms of the MSA, without any financial contributions from Lynn. The court also noted that Steve continued to have nearly 50% parenting time with Peter.

¶ 21    The trial court determined that this *de facto* change in custody entitled Steve to a modification of child support. The court modified Steve's child support obligation from $3,688

per month to $1,865 per month. The order made this modification retroactive from June 1, 2020. The court determined that Steve was entitled to a credit of $7,783 for overpaid child support.

¶ 22    The trial court found that based on these facts, Lynn's claim for child support arrearage was barred by the doctrine of equitable estoppel. In addition, the court determined that Lynn's 14-year delay in seeking to collect purported child support arrearage was unreasonable and prejudicial to Steve. As a result, the court held that Lynn's claim for arrearage was also barred by the equitable doctrine of *laches*.

¶ 23    In regard to Steve's amended motion to modify, which requested contribution toward college expenses, the trial court found that the parties had not reached "an agreement to equally divide the costs of Christina's attendance at college." The court determined that Steve had a substantially greater ability to contribute to Christina's college costs than Lynn. The court retroactively allocated 80% of the college expenses to Steve and 20% to Lynn.

¶ 24    The trial court denied Steve's petition for attorney fees and denied Lynn's amended second petition for rule to show cause. However, the court found that based upon its interpretation of paragraph five of the parties' MSA, Steve had certain "moonlighting" income from which he owed Lynn child support. At the same time, though, the court found that Steve's failure to pay the amounts due for additional child support was not willful because he "presented compelling cause and justification for his failure to make the payments." Thus, the court held that Steve was not in indirect civil contempt.

¶ 25    The trial court found that Steve owed Lynn $8,264 in support arrears for years 2006 through 2020, plus interest. The court determined that this amount was offset by the credit Steve received for his overpayment of child support.

¶ 26    Lynn has appealed from these rulings and Steve has cross-appealed. We first address the

arguments raised by Lynn in her appeal.

¶ 27                                    II. ANALYSIS

¶ 28                                   A. Lynn's Appeal

¶ 29    Lynn argues the trial court erred in finding that her claim for child support arrearage was barred by *laches* and equitable estoppel. She also argues that the court improperly construed the meaning of the term "moonlighting" as set forth in the decree. We address each argument in turn.

¶ 30                         1. *Laches* and Equitable Estoppel

¶ 31    The trial court held that Lynn's 14-year delay in seeking to collect child support arrearage was unreasonable. The court determined that Steve was prejudiced by the delay because he continued to pay child support even though he was entitled to petition the court to modify his support obligations after Christina moved in with him. Based on this, the court applied *laches* to bar Lynn's claim for child support arrearage for the time Christina resided with Steve. Lynn contends this was error.

¶ 32    *Laches* is an equitable affirmative defense that bars recovery by a litigant whose unreasonable delay in bringing an action prejudices the opposing party. *BankUnited, National Ass'n v. Giusti*, 2020 IL App (2d) 190522, ¶ 39; *In re Marriage of Davenport*, 388 Ill. App. 3d 988, 993 (2009). The party asserting a *laches* defense must show, by a preponderance of the evidence, that: (1) the plaintiff failed to exercise due diligence in bringing the action and (2) they suffered prejudice as a result of the delay. *Kampmann v. Hillsboro Community School District No. 3 Board of Education*, 2019 IL App (5th) 180043, ¶¶ 14-15. The doctrine of *laches* is "grounded in the equitable notion that courts are reluctant to come to the aid of a party who has knowingly slept on his rights to the detriment of the opposing party." *Tully v. State*, 143 Ill. 2d 425, 432 (1991).

¶ 33    "Whether *laches* is available as a defense is determined by the facts and circumstances of each case." *Kampmann*, 2019 IL App (5th) 180043, ¶ 14. The determination as to whether *laches* applies to bar a claim is generally left to the sound discretion of the trial court, whose decision will not be disturbed absent an abuse of that discretion. *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 51. Lynn contends, however, that *de novo* review is appropriate since the trial court misapplied the law when it determined that *laches* applied to bar her claim for child support arrearage.

¶ 34    We agree that *de novo* review is appropriate. Whether the trial court misapplied Illinois law requires us to interpret statutory language. Statutory interpretation presents a question of law subject to *de novo* review. *In re Andrew B.*, 237 Ill. 2d 340, 348 (2010).

¶ 35    Lynn contends that, as a matter of law, *laches* does not apply to bar her claim for child support arrearage. Lynn relies on language in section 12-108(a) of the Code of Civil Procedure (Code), as amended in 1997, which provides that "[c]hild support judgments, including those arising by operation of law, may be enforced at any time." 735 ILCS 12-108(a) (West 2004).[3] Lynn maintains that this statutory language precludes the application of *laches* as a defense against the enforcement of her claim for child support arrearage.

¶ 36    In construing section 12-108(a) of the Code, our primary objective is to ascertain and give effect to the intent of the legislature. *In re Craig H.*, 2022 IL 126256, ¶ 25. The most reliable indicator of that intent is the statutory language itself, which must be given its plain and ordinary meaning. *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 15. "When the statutory

---

[3]Prior to July 1, 1997, the statute of limitations governing the enforcement of child support judgments required that an action be brought within 20 years of the judgment. See *In re Marriage of Davenport*, 388 Ill. App. 3d 988, 992 (2009) (citing 735 ILCS 5/13-218 (West 1996)). On July 1, 1997, the legislature enacted Public Act 90-18, which amended the statute of limitations to provide that "[c]hild support judgments, including those arising by operation of law, may be enforced at any time." *Id.*

language is clear and unambiguous, it must be construed as written, without reading in exceptions, conditions, or limitations not expressed by the legislature." *In re Craig H.*, 2022 IL 126256, ¶ 25.

¶ 37     In *In re Marriage of Saputo*, 363 Ill. App. 3d 1011 (2006), this court held that the 1997 amendment to section 12-108(a), which added the phrase "may be enforced at any time," allowed for child support judgments to be enforced at any time, even after expiration of the applicable statute of limitations. *Id.* at 1013-16.

¶ 38     *Saputo* concerned a statute of limitations defense rather than a *laches* defense. In general, "[s]tatutes of limitations, applicable in legal actions, are not directly controlling in suits seeking equitable relief." *Meyers v. Kissner*, 149 Ill. 2d 1, 12 (1992). "Statutes of limitations apply to actions at law, while laches is the doctrine of limitations applied to actions in equity." 54 C.J.S. *Limitations of Actions* § 5 (2005). However, "a statute of limitations may serve as a guide in determining whether an action is barred by laches." 13 Am. Jur. 2d *Cancellation of Instruments* § 40 (2023) (citing *Diehl v. Olson*, 141 Ill. App. 3d 110, 115 (1986)). "When fixing the period in which rights and claims would be barred by *laches*, equity follows the law, and courts of equity adopt the period of limitations fixed by statute." *In re Marriage of Smith*, 347 Ill. App. 3d 395, 401 (2004). Consequently, in cases such as this, where a claim or right is not barred by the statute of limitations, *laches* is available as a defense where special circumstances exist that would make it inequitable to grant the requested relief. See *In re Marriage of Smith*, 347 Ill. App. 3d at 401; *Cannella v. Village of Bridgeview*, 284 Ill. App. 3d 1065, 1071 (1996).

¶ 39     Steve contends there are special circumstances which support the application of *laches* to bar Lynn's claim for child support arrearage. In support of this contention, Steve relies on the same reasoning the trial court relied upon—namely that Steve was prejudiced by Lynn's delay in seeking to collect child support arrearage because he continued to pay child support, even though he was

entitled to petition the court to modify the support after Christina moved in with him. Steve seems to suggest that Lynn's conduct in continuing to accept child support payments from him, without objection or complaint, lulled him into not filing a motion to modify. We find that such a suggestion unfairly penalizes Lynn for Steve's inaction in failing to petition the court to modify his child support obligations. Steve's failure in this regard was a result of his own doing and cannot be attributed to Lynn. Steve cannot now complain that he was prejudiced by his own decision not to file a motion to modify child support. Indeed, it appears that Steve is the party who failed to exercise due diligence.

¶ 40    Steve has failed to show any prejudice to his ability to petition the trial court to modify his child support obligations. Therefore, we find the trial court erred in finding that *laches* barred Lynn's claim for child support arrearage where Steve suffered no prejudice as a result of Lynn's delay in seeking to collect the arrearage. "Mere delay in bringing suit is not enough to establish *laches*; the defendant must show prejudice or hardship from the delay." *Gacki v. Bartels*, 369 Ill. App. 3d 284, 293 (2006). Here, there was no prejudice from the delay.

¶ 41    For these same reasons, we also hold that the trial court erred in finding that Lynn's claim for child support arrearage was barred by equitable estoppel. Like *laches*, equitable estoppel requires a showing of prejudice. See, *e.g.*, *Northwest Diversified, Inc. v. Desai*, 353 Ill. App. 3d 378, 399 (2004) (noting that prejudice is an essential element of equitable estoppel).

¶ 42                    2. Construction of the Word "Moonlighting"

¶ 43    Paragraph five of the MSA obligated Steve to pay Lynn 28% of any net income he received from additional employment ("moonlighting") within seven days of receiving it. The trial court found that the language in this paragraph was ambiguous on the ground that it was susceptible to more than one interpretation. In an effort to resolve this purported ambiguity, the court determined

11

that "moonlighting" meant "additional employment," which in turn meant "working for another employer as an employee and/or as an officer of another entity." Based on this construction, the court held that the additional income Steve earned from working at Resurrection Healthcare did not constitute "moonlighting" income because it was not derived from "additional employment." The court determined that the additional income could not be considered in calculating Steve's child support obligation. "A trial court's determination of income is reviewed under an abuse of discretion standard." *In re Marriage of Britton*, 2022 IL App (5th) 210065, ¶ 57; *In re Marriage Sinha*, 2021 IL App (2d) 191129, ¶ 43 (same).

¶ 44    Black's Law Dictionary defines "moonlighting" as: "The fact or practice of working at a second job after the hours of a regular job. – Also termed *dual employment; multiple job-holding*." Black's Law Dictionary 1161 (10th ed. 2014) (italics in original). This definition is largely consistent with the definition adopted by the trial court. Therefore, we find no error in the court's definition of "moonlighting."

¶ 45    However, we disagree with the trial court's finding that because the additional income Steve received from Resurrection Healthcare did not constitute "moonlighting" income, that it was not subject to a claim for child support arrearage. The statute makes no distinction between income derived from moonlighting employment, additional employment, or primary employment. "For purposes of determining statutory child support obligations, the General Assembly has adopted an expansive definition of what constitutes" income. *In re Marriage of Rogers*, 213 Ill. 2d 129, 136 (2004).

¶ 46    Our supreme court has explained that for purposes of child support, income is "simply 'something that comes in as an increment or addition *** : a gain or recurrent benefit that is usu[ally] measured in money *** : the value of goods and services received by an individual in a

given period of time. ' " *In re Marriage of Rogers*, 213 Ill. 2d at 136-37 (2004) (quoting Webster's Third New International Dictionary 1143 (1986)). Income for purposes of calculating child support has been defined as "any form of payment to an individual, regardless of its source and regardless of whether it is nonrecurring, since 'the relevant focus under section 505 is the parent's economic situation at the time the child support calculations are made by the circuit court.' " *In re Marriage of Dahm-Schell*, 2021 IL 126802, ¶ 40 (quoting *In re Marriage of Rogers*, 213 Ill. 2d at 138). The statutory definition of income is broad and "includes gains and benefits that enhance a noncustodial parent's wealth and facilitate that parent's ability to support a child or children." *In re Marriage of Mayfield*, 2013 IL 114655, ¶ 16. The Marriage Act "creates a rebuttable presumption that any such gain or benefit is income for child support unless specifically excluded by the statute." *In re Marriage of Dahm-Schell*, 2021 IL 126802, ¶ 41.

¶ 47 Based on these definitions of income and considering the principles which must guide the trial court in calculating child support, we hold that the court abused its discretion when it determined that the additional income Steve earned from working at Resurrection Healthcare could not be considered in calculating his child support obligation.

¶ 48 Lynn argues that if we reject Steve's definition of "moonlighting," this necessitates a reconsideration of the trial court's finding that he was not guilty of indirect civil contempt for failing to provide her with copies of his federal tax returns. Lynn contends that the court determined that Steve was in compliance with the child support order based on its interpretation of the term "moonlighting." Lynn suggests that "a different definition adopted on appeal would render Steve in noncompliance."

¶ 49 Lynn's arguments are an invitation to this court to relitigate the issue of Steve's tax returns and substitute our judgment for that of the trial court. It is an invitation we decline to accept. Our

finding does not disturb the trial court's determination the Steve acted reasonably, in part, due to the ambiguity of the word "moonlighting."

¶ 50                              B. Steve's Cross-Appeal

¶ 51                         1. Retroactive Modification of Child Support

¶ 52    The trial court determined that the *de facto* change in custody, which occurred in August 2014, when Christina began exclusively residing with Steve, entitled Steve to a downward modification of child support. The court reduced Steve's child support from $3,688 per month to $1,865 per month. The court made this modification retroactive from June 1, 2020 through July 31, 2021.

¶ 53    In general, a trial court's decision regarding the retroactivity of child support is reviewed for an abuse of discretion. *In re Marriage of Schlei*, 2015 IL App (3d) 140592, ¶ 12. An abuse of discretion occurs when the court's ruling is arbitrary, fanciful, or unreasonable, or when the ruling rests on an error of law. *Urban Partnership Bank v. Chicago Title Land Trust Co.*, 2017 IL App (1st) 162086, ¶ 15.

¶ 54    Steve contends that the trial court abused its discretion by applying an incorrect section of the Dissolution Act to calculate the downward modification of his child support obligation. Steve argues that the court should have relied on section 505(a)(3.8) of the Dissolution Act, rather than section 505(a)(2), in making the calculation. Section 505(a)(3.8) gives guidance in cases where physical care is shared between the parents and provides in relevant part that:

> "If each parent exercises 146 or more overnights per year with the child, the basic child
> support obligation is multiplied by 1.5 to calculate the shared care child support obligation.
> The court shall determine each parent's share of the shared care child support obligation
> based on the parent's percentage share of combined net income." 750 ILCS 5/505(a)(3.8)

(West 2018).

¶ 55    Steve claims that the parties' JPA granted him at least 156 overnights, exclusive of holiday and vacation time. Steve maintains that his parenting time was increased in July 2007, when he was awarded parenting time with the children for one half of the summer, which he claims resulted in the parties having nearly equal parenting time. Steve points out that he had nearly 50% parenting time with Peter.

¶ 56    Steve contends that application of section 505(a)(3.8) to the income figures proposed by Lynn and adopted by the trial court, would have resulted in him owing $1,229 per month in child support rather than $1,865 per month. Lynn responds that the trial court properly exercised its discretion when, instead of relying on section 505(a)(3.8), it relied on the statutory factors enumerated in section 505(a)(2) (750 ILCS 5/505(a)(2) (West 2018)).

¶ 57    Section 505(a)(1) of the Dissolution Act establishes the statutory guidelines trial courts should consider in determining child support. *In re Marriage of Mayfield*, 2013 IL 114655, ¶ 17. The court computes the amount of child support to be paid by the supporting parent based on the number of children and a corresponding percentage of the supporting parent's net income. *Id.* ¶¶ 16-17; *In re Marriage of Turk*, 2014 IL 116730, ¶ 17.

¶ 58    When custody is shared, the trial court has the discretion to choose between two options in determining child support: (1) apportion the percentage between the parents; or (2) consider the statutory factors enumerated in section 505(a)(2).[4] *In re Marriage of Smith*, 2012 IL App (2d) 110522, ¶ 66; *In re Marriage of Reppen-Sonneson*, 299 Ill. App. 3d 691, 695 (1998). Here, the

---

[4]The statutory factors include, but are not limited to, the following: the financial resources and needs of the parents and child; the standard of living the child would have enjoyed had the marriage or civil union not been dissolved; and the physical and emotional condition of the child and the child's educational needs. 750 ILCS 5/505(a)(2)(A)-(D) (West 2018).

trial court chose the second option based on Steve's greater income compared to Lynn's income. The court found that Lynn's imputed yearly income was $30,000, and that Steve's yearly income was $331,802. "[W]hen one parent earns a disproportionately greater income than the other, that parent clearly should bear a larger share of the support." *In re Keon C.*, 344 Ill. App. 3d 1137, 1143 (2003). Based on the record before us, we cannot say that the court abused its discretion by choosing to apply section 505(a)(2), rather than section 505(a)(3.8).

¶ 59     Steve next contends the trial court erred by not making the downward modification of child support retroactive to February 2020—when Lynn received notice of the motion to modify. Lynn responds that it was Steve's delay in producing his tax returns which justified the court's decision to make the modification retroactive to June 2020, rather than February 2020.

¶ 60     The retroactive modification of child support is addressed in section 510(a) of the Dissolution Act (750 ILCS 5/510(a) (West 2014)). *In re Marriage of Pratt*, 2014 IL App (1st) 130465, ¶ 33. Section 510(a) "provides that the court may modify child support payments only as to installments accruing subsequent to due notice by the moving party of the filing of the motion for modification." *In re Marriage of Freesen*, 275 Ill. App. 3d 97, 106 (1995) (citing section 510(a)). The "due notice" requirement insures that the nonmoving party "is put on notice prior to any change being made with the respect to the original child support and expense obligations." *In re Marriage of Petersen*, 2011 IL 110984, ¶ 18. Therefore, "the earliest point to which retroactive modification of *** support payments may be ordered is the date on which the non-moving party receives 'due notice' from the moving party of the filing of the modification petition." *In re Marriage of Hawking*, 240 Ill. App. 3d 419, 426 (1992). However, a trial court's decision whether to order a retroactive modification after the nonmoving party receives notice of the motion to modify, is a matter within the court's discretion. *See Brandt v. Brandt*, 99 Ill. App. 3d 1089,

16

1108-09 (1981) (interpreting the predecessor to section 510(a), which allowed a modification to be retroactive to the date of the filing of the petition to modify).[5]

¶ 61    Here, the record shows that in May 2020, the trial court ordered Steve to produce his tax returns for 2006 through 2019. In July 2020, the court ordered him to tender unredacted copies of his tax returns for 2011 through 2017. It subsequently took Steve a further six months to January 2021, to agree to a protective order regarding the terms of the tender of his tax returns. We also note that in the same order the court made the downward modification of child support retroactive to June 1, 2020, the court found that Steve "lacked credibility" with respect to his income and tax filings. Under these circumstances, we cannot say that the court abused its discretion by making the modification retroactive to June 1, 2020.

¶ 62                                    2. Allocation of College Costs

¶ 63    Steve next claims the trial court erred in finding that he and Lynn did not have an agreement to equally share Christina's college expenses. Steve alleges that he, Lynn, and Christina, met at a restaurant in January 2020, where they agreed that Christina would attend the University of Denver (DU). Steve maintains that he and Lynn agreed to equally share Christina's college expenses at DU, which after accounting for the scholarships she received, amounted to each party being obligated to contribute $25,000.

¶ 64    Steve claims that the parties' agreement was subsequently memorialized in an exchange of two January 2020 emails and was reflected by objective conduct. Steve contends that in reliance on Lynn's agreement to equally share the college expenses, Christina committed to attending DU, and he paid a deposit for her housing at the university. According to Steve, after Lynn reneged on the agreement, Christina decided not to attend DU, and instead enrolled at Michigan State

---

[5]"[W]hether a modification is to be retroactive to the date of the filing of the petition, or at any time after, is a matter within the trial court's discretion." *Brandt v. Brandt*, 99 Ill. App. 3d 1089, 1108-09 (1981).

University (MSU). Steve argues on appeal that based on the parties' agreement to equally share Christina's college expenses at DU, they should equally share her college expenses at MSU.

¶ 65    The formation of a valid contract requires an offer, acceptance of the offer, consideration, and terms that are reasonably definite and certain. *Vassell v. Presence Saint Frances Hospital*, 2018 IL App (1st) 163102, ¶ 51. To form a valid contract, "there must be mutual assent by the contracting parties on the essential terms and conditions of the subject about which they are contracting." *Reese v. Forsythe Mergers Group, Inc.*, 288 Ill. App. 3d 972, 979 (1997). "[T]he issues of whether a contract existed, the parties' intent in forming it, and its terms are all questions of fact to be determined by the trier of fact." *Prignano v. Prignano*, 405 Ill. App. 3d 801, 810 (2010). We give deference to the trial court's findings of fact, which we disturb only if they are against the manifest weight of the evidence. *Id*. A factual finding is against the manifest weight of the evidence only when the opposite conclusion is apparent, or when the finding is arbitrary, unreasonable, or not based on the evidence. *Country Mutual Insurance Co. v. Olsak*, 2022 IL App (1st) 200695, ¶ 109.

¶ 66    Some Illinois courts, and courts in other jurisdictions, have recognized that an exchange of emails may constitute an enforceable agreement if the writings include all of the agreement's essential terms. See *Nomanbhoy Family Ltd. Partnership v. McDonald's Corp.*, 579 F. Supp. 2d 1071, 1095-97 (N.D.Ill. 2008); *Kasowitz, Benson, Torres & Friedman, LLP v. Duane Reade*, 98 A.D. 3d 403, 404, 950 N.Y.S. 2d 8, 9-10 (2012). In this case, a review of the emails upon which Steve relies are insufficient to establish an agreement regarding Christina's college expenses.

¶ 67    On January 25, 2020, Steve sent an email to Lynn stating, in relevant part:

"This is confirming our agreement with regard to Christina's attendance at the University of Denver and our mutual agreement to each pay for half of her undergraduate college

tuition and expenses. *** Per our conversation today, we each agreed to pay ½ of the total costs for Christina to attend the University of Denver. *** Based on this agreement, please confirm you will agree to an agreed order with regard to college and we will have that prepared."

¶ 68    On January 26, 2020, Lynn responded to the email, stating in relevant part:

"Yes, I agree to Christina attending the University of Denver and she can officially commit. *** We should know the details of any additional aid in the next 2 weeks and can move forward at that time with more specific numbers. *** We can put this into a formal agreement after we have agreed on the calculations and numbers. And then we can have a judge enter the Agreed Order."

¶ 69    The above emails clearly show there were essential terms that were never agreed upon. For example, Lynn indicated that the parties could move forward with more specific numbers after they obtained further details of any additional aid Christina might receive. Moreover, "the emails make clear that both parties thought it essential that there be a written document that once and for all articulated the final understanding on the essential terms." *Nomanbhoy Family Ltd. Partnership*, 579 F. Supp. 2d at 1096.

¶ 70    Thus, we hold that the trial court's finding that the parties never reached an agreement to equally share Christina's college expenses was not against the manifest weight of the evidence. We also hold that given the disparity in the parties' respective incomes and resources, the court did not err by ordering Steve to pay 80% of Christina's college expenses and Lynn to pay 20%.

¶ 71    Section 513 of the Dissolution Act authorizes a trial court to award educational expenses to a non-minor child "as equity may require." 750 ILCS 5/513(a) (West 2018). "In awarding educational expenses for adult children, the court should consider (1) the present and future

financial resources available to the parties, (2) the standard of living the child would have enjoyed had the parents remained married, (3) the child's financial resources, and (4) the child's academic performance." *In re Marriage of Budorick*, 2020 IL App (1st) 190994, ¶ 83 (citing section 513(j)(1)-(4) of the Dissolution Act). A trial court's decision to award educational expenses is reviewed for an abuse of discretion. *In re Marriage of Thomsen*, 371 Ill. App. 3d 236, 243 (2007).

¶ 72    Steve argues that the trial court abused its discretion in requiring Lynn to contribute only 20% of the cost of Christina's college expenses. In support of this contention, Steve claims that Lynn judicially admitted through her testimony and pleadings that she could contribute at least 25% of the cost of Christina's college expenses.

¶ 73    Steve contends that the following testimony by Lynn constitutes the judicial admission:

"Q. So jump forward, now Christina is at Michigan State, not asking that she leave Michigan State, you indicated a willingness to contribute towards it. Do you know what you are able to do, in your view, as to how much you can contribute towards her college?

A. I would say, say between 6 – to $8,000 a year.

Q. And what is, to your knowledge, the net amount of Michigan State after any aid that Christina gets?

A. I'm not sure. I know she got some scholarships, and I believe it's down to about 40,000 now, maybe a little bit under 40,000, and I could about 6 – to 8,000."

¶ 74    Lynn's testimony does not constitute a judicial admission. A statement does not constitute a judicial admission when the party's testimony is uncertain or amounts to an estimate or opinion. *Hall v. Cipolla*, 2018 IL App (4th) 170664, ¶ 106; *Dunning v. Dynegy Midwest Generation, Inc.*, 2015 IL App (5th) 140168, ¶ 50. Lynn's testimony shows that she was equivocal regarding the

amount she could contribute towards Christina's college expenses and provided a range of numbers, rather than a concrete single number.

¶ 75    Steve also argues that Lynn misrepresented her financial condition, where she failed to disclose the substantial sums of money she received from her father. Steve points out that Lynn is a beneficiary of her father's trust and represented on a loan application that she owned real property valued at $700,000.

¶ 76    Here, the record shows that both parties submitted various financial documents to the trial court regarding their respective incomes and financial resources. The trial court reviewed these documents, heard the parties' testimony concerning their respective current incomes and debts, and was able to weigh the credibility of each party. The trial court was in a better position than this court to evaluate and determine what percentage each party should contribute towards Christina's college expenses. Under these circumstances, we cannot say that the court abused its discretion in apportioning Christina's college expenses.

¶ 77                              3. Petition for Attorney Fees

¶ 78    Steve's final argument is that the trial court erred in denying his petition for attorney fees after it granted his motion for sanctions pursuant to Illinois Supreme Court Rule 137. "The determination of whether to grant a motion for sanctions is a matter committed to the sound discretion of the trial court, as is the assessment of a monetary award once sanctionable pleading has been found." *Century Road Builders v. City of Palos Heights*, 283 Ill. App. 3d 527, 531 (1996) (internal citations omitted); see also *Sterdjevich v. RMK Management Corp.*, 343 Ill. App. 3d 1, 22 (2003) (an award of attorney fees under Rule 137 is discretionary). We will not substitute our judgment for that of the trial court by reweighing the evidence or the discretionary factors upon which the court relied in denying the petition for attorney fees. Therefore, we see no abuse by the

court in denying Steve's request for attorney fees.

¶ 79                                    III. CONCLUSION

¶ 80     For the foregoing reasons we find: (1) the trial court erred in finding that Lynn's claim for child support arrearage was barred by *laches* and equitable estoppel; and (2) the court abused its discretion when it determined that the additional income Steve earned from working at Resurrection Healthcare could not be considered in calculating his child support obligation. Therefore, these rulings are reversed, and the case is remanded to the trial court to recalculate Steve's child support obligation and arrearage.

¶ 81     We affirm the trial court's rulings: (1) as to its calculation of the downward modification of Steve's child support obligation; (2) making the modification of child support retroactive to June 2020, rather than February 2020; (3) finding that the parties did not have an agreement to equally share Christina's college expenses; (4) allocating the parties' respective contributions towards Christina's college expenses; and (5) denying Steve's petition for attorney fees.

¶ 82     Affirmed in part and reversed in part; cause remanded for further proceedings.